HAMITER, Justice.
In this action Jerry K. Nicholson sought recognition of a servitude of drain (through certain conduits or waterways) in favor of his estate, known as Eldorado Plantation, over the adjoining property owned by Holloway Planting Company, Inc., the latter being called Kenmore Plantation.
In his petition plaintiff also prayed for injunctions, both mandatory and prohibir *6 tive, to compel defendant to remove obstructions in the conduits allegedly caused by it (or by its ancestors in title) and to prohibit interference with the flow of water from his estate. Originally, seven drains were involved, but subsequently the demand as to two of them was abandoned.
The defendant answered, denying the'alleged obligation. Alternatively, it prayed that if a servitude be recognized the judgment should further decree that the plaintiff may not cut canals or drains, or construct any other artificial works, which might make the servitude more burdensome.
The trial court held there was no servitude of drain through the waterways, and it dismissed plaintiff’s suit.
Plaintiff appealed.
. On the original hearing the Court of Appeal determined that a servitude of drain does exist in favor of plaintiff’s estate over that of the defendant. But it further found that the record failed to disclose that the latter was seriously impairing the use of the servitude and that the “evidence contains not the slightest, evidence to show that such water as presently flows through these crevasse. channels is impounded therein and backs up on Eldorado.” Consequently, it affirmed that part pf- the district court’s judgment- which denied injunctive relief to plaintiff.
The complete original decree in the Court of Appeal was as follows: “Accordingly, it is hereby ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby amended in that a servitude of drain be and the same is hereby found and declared to exist in favor of Eldorado Plantation, the property of plaintiff Jerry K. Nicholson, over and upon adjoining Kenmore Plantation belonging to defendant, Holloway Planting Company, Inc., said servitude being exercisable in conformity with the - law as herein expressed.
“It is further ordered, adjudged and decreed that the preliminary injunction granted by the trial court prohibiting plaintiff Jerry K. Nicholson from opening artificial drains in the banks of the crevasse channels on Eldorado Plantation belonging to said plaintiff, be and the same is hereby made permanent and said plaintiff perpetually so enjoined.
“It is further ordered, adjudged and decreed that all costs of these proceedings both in the-trial court and on appeal, be paid jointly by plaintiff Jerry K. Nicholson and defendant Holloway Planting Company, Inc.
“Amended and rendered.” (Parenthetically, we note that, although such decree perpetuates an injunction purportedly granted to defendant by the trial court, the Court of Appeal actually established that *8 relief itself because the judgment appealed from made no provision for it. Plaintiff’s suit was merely dismissed.)
The Court of Appeal ordered a rehearing, but it limited such to a consideration of the .correctness of that part of the decree granting an injunction to the defendant. And on the rehearing that tribunal reversed its judgment insofar as the injunctive relief was concerned, holding that it had improperly considered the issue raised by the defendant’s alternative demand for the reason that the latter had not appealed or answered plaintiff’s appeal. Otherwise the original decree was affirmed. 216 So.2d 562.
Only the defendant applied to this court for certiorari. In the application it urged that the court erred (1) in recognizing the existence of a servitude of drain through the channels over its property, and (2) in refusing to consider its alternative demand for an injunction against plaintiff.
We granted certiorari (253 La. 622, 218 So.2d 900) principally because we entertained serious doubt as to the correctness of the Court of Appeal’s procedural ruling to the effect that the alternative demand of defendant could not be considered. Nevertheless, inasmuch as the writ was not limited, the case is before us as if it were on direct appeal; and we will consider both issues raised in the application for certiorari.
The record, we believe, establishes the findings of the Court of Appeal with regard to the nature of the properties involved. With less detail than given by that court, they are as follows:
Eldorado (plaintiff’s estate) is adjacent to, and on the north of, Kenmore (defendant’s estate). Both plantations front on the west side of Bayou Maringouin in the southerly part of Pointe Coupee Parish, and they extend in a westerly direction into the Atchafalaya River swamp. The predominant slope is from east to west from the bayou. Running across both properties are the remnants of numerous old crevasse channels, formed over a period of many, many years by the flood waters of Bayou Maringouin. These channels run generally in a northeasterly-southwesterly direction. The manner of • their development and of their present condition (which also serves as a description of the lands involved as they presently exist) is summarized by the Court of Appeal thusly: “* * * Repeated flow of floodwater through the channels caused their banks to ‘build’ or elevate inasmuch as the water flowing over them first deposited its heaviest silt along their edges. It is conceded the channels in question are ‘bifurcated’ or divided, which occurrences generally resulted from the flowing waters encountering some obstacle such as a tree or high ground which impeded their progress and caused them to separate. The parting thus *10 effected resulted in a single channel dividing into two canals which might themselves thereafter disjoin' for similar reason and still subsequently rejoin or unite. In this manner a braided effect was achieved in the crevasse channels on both Eldorado and K»nmore. The process also resulted in the gradual elevation of the crevasse channels banks thusly producing miniature levees along each such channel. In effect, therefore, the areas between the braided channels became basins or ‘lakes’ which trapped falling rainwater and from which the water could not flow until its level therein reached and exceeded the lowest point of its containing embankment.”
Controlling the issues herein is Article 660 of the Louisiana Civil Code which provides: “It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
“The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
“The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.”
With regard to the issue of whether a servitude of drain through the channels was owed by Kenmore to Eldorado the Court of Appeal observed: “* * * we reach the conclusion the trial court erred in finding that Eldorado does not lie ‘above’ Kenmore. • We find that whereas the primary slope in subject properties is from east to west, there is also a definite, though slight, overall fall from northeast to southwest. Considerable evidence was adduced by both parties on this crucial issue. However, only brief reference to the testimony of the several witnesses testifying on''this question is necessary to support our conclusion that Eldorado is the dominant estate.
“ * * * the crevasse channels in question do constitute natural drains insofar as they naturally drain the rain water which falls therein and also insofar as they serve as outlets for such water as overflows the banks of the basin areas on Eldorado. * * * ”
We find that the evidence amply sustains the court’s holding. We deem it unnecessary to refer in detail to all of the testimony mentioned by the Court of Appeal, but we note particularly that of James M. Holloway (an officer of the defendant corporation, which owns Kenmore, who is also the general manager thereof). He admitted that water which enters the channels at the north boundary of Kenmore runs in a southerly direction from Eldorado, and that generally, the land falls normally from north to south, although the *12 fall is not as great as the fall from east to west.
The mentioned channels are of natural origin; and since Eldorado is “above” Kenmore the latter is legally obligated to receive surface waters which flow naturally through them from the former, but only such as will ordinarily run there in view of the configuration of the land.
, This latter limitation gives rise to the, 'second issue, herein, which is whether the defendant is entitled to an injunction to prohibit the plaintiff from performing acts which might make the servitude more onerous. As we have previously observed, our principal. reason for issuing a writ in the instant case was that we entertained doubt as to the correctness of the Court of Appeal’s procedural ruling to the effect that the defendant could not press his ab ternative demand in that court because it had not appealed or answered plaintiff’s appeal. However, we pretermit a holding on such procedural issue inasmuch as our review of the record convinces us (for the reasons hereinafter shown) that the injunction was properly denied, the defendant not having established on the merits its entitlement thereto. Consequently, wé shall affirm the Court of Appeal decree denying it. ■
We recognize as correct the defendant’s assertion, and the Court of Appeal’s holding in its original opinion, that the last paragraph of Article 660 (above quoted) prohibits the plaintiff’s doing any act which might make the servitude more burdensome. We also agree that, because of this prohibition, plaintiff cannot, by means of artificial cuts, drains, etc., cause water to drain into these crevasses, and thence over defendant’s plantation, which would naturally be trapped and would stagnate in the basins on his property between the levees on the banks of the conduits. This, of, course, would increase the volume of water which would otherwise flow naturally into the crevasses. -The holding of the Court of Appeal on its original hearing is fully supported by the cases cited in the opinion which discusses them in detail. See also Chandler v. City of Shreveport, 169 La. 52, 124 So. 143, which summarized the earlier jurisprudence, as follows: “It is true that this court has repeatedly held, in the interest of agriculture, that the proprietor, of an upper estate may ditch his farm or plantation for agricultural purposes, even though the incidental effect of such ditching may increase the rapidity of the flow when it reaches the lower estate. * * * In other words, the proprietor of an upper estate may make such works as tend to accelerate and hasten the drainage of his own lands beyond the natural slow process. But he can do nothing which would tend to throw upon the lower estate the burden of receiving waters which *14 would not otherwise drain upon it. * * * ” (Italics ours)
Further, we are aware that testimony in the record shows that some artificial cuts have been made in the said levees of the channels as they passed through Eldorado. But we quite agree with the Court of Appeal (in observations made by it in connection with its granting of a limited rehearing) that: “ * * * The record does not contain evidence of any specific abuse by plaintiff of the privilege enjoyed. Nor has defendant shown by any convincing evidence that the artificial openings made by plaintiff in the crevasse channels have diverted any additional water onto defendant’s premises. It is not shown in which direction the waters carried by these artificial openings leave plaintiff’s premises. The record is barren of proof that this circumstance has increased in even the slightest degree the amount of water draining from plaintiff’s property onto defendant’s. Insofar as the record shows, the waters draining through these artificial ■channels could all be draining to the west which would be the general direction of said artificial canals inasmuch as they bisect or traverse the crevasse channels which run from north to south. If, as defendant contends, the burden incumbent upon his property has thus been increased, it is defendant’s obligation to show wherein such increase has occurred. Our original decree makes it clear that plaintiff is free to construct such works on his premises as he desires provided it does not divert ' onto defendant’s property waters which would otherwise not flow naturally thereon. * * *” (This opinion is contained in the record, but apparently it was inadvertently . omitted from the published report.)
There is also some suggestion in the record that plaintiff in future development of Eldorado intends to construct such works as will throw more water on Kenmore which- would not naturally flow thereon and thereby overburden the servitude. But we cannot grant an injunction on such mere future possibility of the com-' mission of such acts.
For the reasons assigned the judgment of the Court of Appeal, as amended on rehearing, is affirmed. Defendant shall pay all costs of this court.-
BARHAM, J., concurs.