255 So.2d 783 (1971)
LUMBER PRODUCTS, INC.
v.
Norma S. HIRIART and Danwood, Inc.
No. 4347.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1971.
Rehearing Denied January 10, 1972.
*784 Cronvich & Wambsgans, A. W. Wambsgans, Metairie, for plaintiff-appellant.
Morris B. Phillips, New Orleans, for defendant-appellee.
Before SAMUEL, REDMANN and BOUTALL, JJ.
SAMUEL, Judge.
Lumber Products, Inc. filed this suit against Norma S. Hiriart and Danwood, Inc. to recover $1,331.32, plus the cost of filing labor and materialman's liens, for materials supplied and services performed on the floors of Mrs. Hiriart's building under an oral subcontract with Danwood, her general contractor.
Mrs. Hiriart answered the petition, denying the work was of any value to her because it had been performed in a careless and unworkmanlike manner. She also reconvened for $13,256.75, the amount allegedly required to correct the damage caused by the plaintiff's defective and negligent workmanship. Plaintiff filed an exception of no cause of action to the reconventional demand and, after a hearing thereon, that exception was overruled. Danwood did not file an answer. Mrs. Hiriart died prior to trial and Clarence O. Magee, her testamentary executor, was substituted for her. Hereinafter that litigant is referred to as owner or appellee.
The District Judge referred the case to the Commissioner of the Civil District Court for trial pursuant to LSA-R.S. 13:1171. After the hearing, the Commissioner filed his report and recommended a judgment on the main demand in favor of plaintiff and against both defendants for $778.91, plus $16.90 for the cost of filing liens. He also recommended a judgment on the reconventional demand in favor of the owner and against Lumber Products in the amount of $1,600. The trial judge rendered judgment in accordance with the Commissioner's recommendations. Lumber Products, the subcontractor, has appealed. The owner has not appealed but he has answered the appeal taken by Lumber Products. Danwood, the general contractor, has made no appearance in this court.
Following Hurricane Betsy the owner entered into a contract with Danwood for repair and renovation of a four-story apartment building located at 1215 Royal Street in New Orleans. That contract was never recorded.[1] Danwood orally subcontracted the flooring work to the plaintiff. As Danwood failed to pay for the materials furnished and work done, Lumber Products timely filed labor and materialman's liens pursuant to LSA-R.S. 9:4812 and then filed this suit against the general contractor and the owner.
The property is a French Quarter building estimated to be between 100 and 150 years old. The flooring, including stair treads and landings, was composed of a high percentage of cypress, tongue-in-groove boards, with some pine boards apparently replacing worn-out cypress. As the cypress was old and soft, in addition to the damage resulting from the hurricane, there were many uneven areas caused by foot traffic and foundation sinking. Appellant's *785 obligation under the subcontract was to sand and restrain the flooring to make it as presentable as possible in view of its condition of damage, wear and decay.
After hearing the witnesses and inspecting the premises, the Commissioner concluded appellant had not substantially performed its subcontract and therefore was not entitled to recover thereon. Accepting the testimony of the owner's architect, he found the work had been done in a careless and unworkmanlike manner. He concluded appellant had performed only approximately 55% of its contractual duties, i. e., 55% of the work called for by the subcontract had been acceptably performed and completed, and accordingly recommended for appellant an award of $675.04, representing 55% of $1,227.35 (the latter figure being the amount due under the subcontract), plus the costs of materials and the filing of liens. The amount of appellant's claim for materials was stipulated and there was no dispute over the cost of filing the liens. The $675.04 amount was arrived at by the Commissioner on the basis of unjust enrichment pursuant to Civil Code Article 1965.
In this court appellant contends: (1) it is entitled to the full amount of its claim because its work was not defective; (2) the reconventional demand should have been either dismissed under its exception of no cause of action or denied (or the award thereon reduced) because the work was not defective; and, alternatively, (3) the award on the reconventional demand is excessive. The owner's answer to the appeal seeks only an increase of $173.40 in the award on the reconventional demand (in this court the owner, both in answer to the appeal and in brief, concedes the award to plaintiff on the main demand is proper and should be affirmed).
First we must determine what is before us as a result of the appeal and the answer thereto. The question with which we are particularly concerned is whether we can disturb the award on the main demand adverse to the appellant, by either reducing that award or by setting it aside entirely, under any theory including considering the reconventional demand as an offset claim. While this question could have been considered by the trial court, it is now a basic jurisdictional question. If the award on the main demand is before us on appeal only as to the increase sought by the appellant, we have no authority to disturb that award in any manner adverse to the appellant.
The controlling law is LSA-C.C.P. Art. 2133 which, in all pertinent parts, reads as follows:
"An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. ..." LSA-C.C.P. Art. 2133. (Emphasis ours).
While an appeal brings the whole case before the appellate court insofar as the appellant is concerned, so that the appellant only waives those matters concerning which he does not complain in argument or in brief, an answer to the appeal is more restrictive. The emphasized portions of the above quoted Article 2133 provide the answer must contain a statement of the relief demanded by the appellee and the answer is equivalent to an appeal only as to that part of those parts of the judgment rendered against the appellee concerning which he makes specific complaint in his answer to the appeal. The language of the article is plain and unequivocal. Under that language it is clear that any portion *786 of the judgment concerning which the appellee does not complain in his answer is not before the appellate court on appeal. Accordingly, in the instant case we have no authority to consider any portion of the judgment adverse to the appellee which, by reason of appellee's failure either to appeal or to complain in his answer to the appeal taken by Lumber Products, has become final.
Here the owner has failed to complain of the judgment on the main demand. Therefore, that part of the judgment is before us only on the question presented by the appeal, i. e., whether the award to the appellant should be increased. It is not before us in any other manner and we have no authority to reduce or otherwise change that award in any manner favorable to the appellee. Insofar as the award on the main demand is concerned, it is final and stands in the same position as if no answer to the appeal had been filed.
Thus the questions presented for our consideration are: (1) whether the award to appellant on the main demand should be increased; (2) whether the reconventional demand must be dismissed under the exception; (3) if not dismissed under the exception, whether that demand should be denied or the award thereon reduced because the work done by the appellant was not defective in whole or in part; and (4) if the reconventional demand is not dismissed or the award thereon denied or reduced, whether that award should be increased as prayed by the owner in the answer to the appeal. As we reach the conclusion that the reconventional demand must be dismissed, the only other question for our consideration is whether the award to appellant on the main demand should be increased.
The law is settled in Louisiana that when a contractor has substantially performed the contract he may sue for and obtain the contract price less the cost of any necessary work to remedy minor imperfections in his performance. However, that rule applies only where the contractor has substantially performed.[2] When he does not substantially perform, he is not legally entitled to sue under the contract and any recovery to which he may be entitled is based on the theory of unjust enrichment.[3]
The record justifies the Commissioner's finding that appellant did not substantially perform. Sanding of the stairs was not completed and swirls and ridges produced by a sanding machine were prominent. While the landing areas on the second and third floors were in better condition than the stairs, they were nevertheless still unsatisfactory because of the plaintiff's failure to smoothly sand the filler and the floor boards. The owner's architect established that spot sanding and staining would not be sufficient to remedy the defective workmanship since it would be necessary to remove the finish from the entire landing areas in order to properly complete the spots which had not been properly sanded.
The architect's testimony was substantiated by Stanley J. White, who testified as an expert in the area of floor finishing. He stated the deep circular marks and other defects in the floors of the defendant's house could be remedied by resanding, hand scraping, and the application of two coats of varnish. However, it was his opinion the entire floor area would have to be reworked and that the work performed by appellant was of no substantial value.
Assuming, but not deciding because the same is not an issue before us, appellant can recover on the theory of unjust enrichment, the record clearly establishes the fact *787 that it is not entitled to any increase in the award made in its favor.
Regarding the question of dismissal of the reconventional demand, appellant contends the trial court should have maintained the exception of no cause of action filed in response to that demand because there was no privity of contract between appellant and the owner and an owner does not have a tort action against a subcontractor for defective workmanship based on the theory that the subcontract was performed negligently. The established rule is that, in the absence of a contrary statutory provision,[4] an action ex contractu cannot be maintained against a party to a contract by a person who is not privy thereto.[5] Thus, appellant argues that since its only dealings were with the owner's general contractor, there is no privity of contract between it and the defendant, whose only remedy is against the general contractor.
The owner argues recovery can be obtained for the damage to the floors in tort, irrespective of a lack of privity of contract between the owner and the subcontractor, because the latter performed its duties negligently. Cited in support of this argument is Marine Insurance Company v. Strecker,[6] in which the Louisiana Supreme Court allowed a tort action against a contractor by a tenant's subrogee to recover for loss of glassware broken when a cabinet sagged because of the failure of a defective cabinet support. After extensive analysis, the Supreme Court concluded the tort suit was proper even though there was no privity of contract between the tenant and the contractor who installed the cabinet.
A careful examination of this case and other cases[7] allowing recovery against a contractor in tort by one not privy to a contract with him reveals a significant and basic distinction from those cases denying recovery because of the absence of privity of contract. Where the damage sued for is the defectively performed work itself, the action is strictly a contractual one and only those who are in privity with the contractor have an action against him. However, where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present.
Hence, in the Strecker case, the tenant could not have sued for the repair of defectively hung cabinets, but she was allowed to sue for the damage caused by this defect. Similarly, in Kendrick v. Mason, supra at footnote 7, the plaintiff could not have sued the contractor for the cost of remedying defects in the installation of the town sewer system, but his tort action against the contractor was allowed for damage to his home caused by defects in the installation of the sewer system even though he was not privy to the contract. Further, in Truxillo v. Gentilly Medical Building, Inc., supra at footnote 7, the business visitor to a building could not have sued the building's janitorial contractor for breach of contract in failing to properly eliminate excess cleaning water from a *788 hallway, but his suit against that contractor was allowed when the excess water precipitated his fall and caused him bodily injury.
The reconventional demand before us is one to collect for defective workmanship, i. e., to have the work performed as called for in the subcontract; it is not for collection of damages caused by defective workmanship; and it is a claim based on a subcontract to which the owner was not privy. Under these circumstances, there being no statutory exception here to the privity of contract rule, the owner had neither a right nor a cause of action against the appellant. Consequently, that portion of the judgment awarding the owner the sum of $1,600 must be reversed.
For the foregoing reasons, the judgment of the trial court on the main demand in favor of the plaintiff and against the defendants is affirmed. The judgment on the reconventional demand in favor of Clarence O. Magee, as substitute plaintiff in reconvention for Norma S. Hiriart, in the sum of $1,600 is hereby reversed, and it is now ordered that there be judgment on that demand in favor of the defendant in reconvention, Lumber Products, Inc., and against the substitute plaintiff in reconvention, Clarence O. Magee, dismissing the reconventional demand. Each party is to pay its own costs in the trial court. The costs of this appeal are to be paid by the appellee, Clarence O. Magee, substitute plaintiff in reconvention.
Affirmed in part; reversed in part.
REDMANN, Judge (dissenting).
I dissent from the procedural ruling that an appellee who is perfectly satisfied with the trial court judgment nevertheless must answer the appeal. A ruling like this one is prohibited by the first sentence of C.C.P. art. 2133: "An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. * * *" (Emphasis added.)
It is only where an appellee does desire some change in the judgment that the language of the second and third sentences of art. 2133, relied on by the majority, becomes applicable. Those sentences read in part: "In such cases [viz., those referred to in the first sentence], he must file an answer to the appeal, stating the relief demanded * * *. The answer filed by the appellee shall be equivalent to an appeal from any portion of the judgment * * * of which he complains in his answer. * * *" (Emphasis and bracketed words added.)
In Nicholson v. Holloway Planting Co., 255 La. 1, 229 So.2d 679, 681 and 682 (1969),[1] factually dissimilar but procedurally analogous to our case, our Supreme Court granted certiorari because of doubt about a procedural ruling that certain relief could not be afforded an appellee who neither appealed nor answered the appeal.
There plaintiff sought recognition and enforcement of a natural servitude of drain. Defendant disputed the servitude, but alternatively prayed that, if the servitude were recognized, the judgment should prohibit enlargement of the servitude by artificial works. The trial court dismissed plaintiff's suit and plaintiff alone appealed. The court of appeal reversed, recognizing the servitude but granting defendant's alternative prayer, but on rehearing held it could not grant defendant relief since it had not appealed nor answered plaintiff's appeal.
The Supreme Court twice stated it granted certiorari because of this procedural ruling; however, it pretermitted a holding on that issue because defendant had not established any entitlement to the *789 relief since no abuse of the servitude by plaintiff was shown.
Although only by inference from the recited purpose of the grant of certiorari, Nicholson does suggest that, if a judgment in appellee's favor is appealed, the appellee's unquestioned standing to contest complete reversal includes standing to assert any grounds for restricting the quality of a proposed reversal, without the necessity of appealing or answering the appeal.
This view is analogous to that stated by (now Chief) Justice McCaleb, in dissenting from a refusal (on other grounds[2]) of writs in Breland v. American Ins. Co., 246 La. 379, 164 So.2d 362 (1964). There the court of appeal, 163 So.2d 583, 584, had stated that a defendant in whose favor a judgment was rendered, dismissing a tort action, was "foreclosed" from arguing its insured was not negligent, since it had not appealed nor answered the appeal, and the trial court had concluded its insured was negligent but not liable because plaintiff was contributorily negligent. Observing that C.C.P. art. 2133 "only obliges an appellee to answer an appeal when he desires to have `* * * the judgment modified, revised, or reversed in part * * *'", Justice McCaleb notes "obviously, appellee here, with a judgment in its favor, did not seek any such relief."
(Here, appellee did ask an increase of that part of the judgment in her favor, but it may be conceded that this did not amount to a request for reversal of that part of the judgment in appellant's favor. As to that part of the judgment appellee may be said not to have answered the appeal.)
In my opinion art. 2133's prohibition against obliging an appellee to answer an appeal (except where the appellee desires modification of the judgment appealed from) preserves to an appellee in all cases the full right to contest the modification sought by appellant.[3]
Here appellant seeks reversal of an award against itself as damages for breach of a contract to which appellee was not a party. Appellant's theory is that this award is unjust because appellee was not privy to the contract. Supposing it a correct statement of law that non-privity defeats the owner's claim as a claim, is it not just to allow the owner to point out that, to the extent the subcontractor obtained an award against her, her "claim" is truly only a defense? Should she not be allowed to show the award against herself (in the same judgment), not for purpose of having that unappealed award reversed, but to explain why the appealed award in her favor should not be reversed (at least to that extent)?

The Merits
In my opinion the award against appellant subcontractor should not be eliminated but only reduced to the amount of the award in its favor.
The traditional notion that lack of privity to a contract eliminates any actionable interest in one not privy might (in the absence of other law) prevent one's recovery *790 of damages for breach of contract against his contractor's subcontractor.
But this is not the only law here pertinent. The third-party beneficiary's entitlement to enforce a stipulation pour autrui (C.C. art. 1890) invites exploration. So does the fact that non-privity has been eliminated as a defense to the subcontractor's claim against the owner by the building contract law in cases ruled by R.S. 9:4812: that statute makes the owner liable for the subcontract's price, and it may be that the imposition of liability logically entitles the owner to the performance for the price of which she has been made liable. Thus non-privity is not necessarily determinative, at least to the extent the owner has been denied her valid defense by trial court error in the same judgment. (And, finally, the inference should be avoided that the breach of a contractual duty cannot be also a breach of a non-contractual duty. A floor-sanding subcontractor who lets a machine grind all the way through a good floor may have breached a contractual duty owed to the contractor to perform skilfully, but he has also breached a general duty owed to the owner not to destroy the owner's floors.) Here, despite the disparity in amounts ($1,600 to re-do 45% of a $1,200 job) suggestive of damage to the floors, no specific damage other than non-performance of part of the contract is proven. We may agree that non-privity prevents affirmative recovery by the owner. Still non-performance is available as a defense for the owner to prevent the subcontractor's recovery. The owner is personally liable to subcontractors exclusively because the statute, R. S. 9:4812, makes him liable, as an added obligor on an obligation which is primarily the contractor's. But the owner is only liable "to the same extent as is the contractor", R.S. 9:4806. Thus if the contractor would not be liable here, the owner should not be liable.
The judgment below, in form, grants an award of money to both subcontractor and owner against each other.[4] But in substance the entire judgment grants an award only to the owner, since the award in her favor is greater than that against her. The legal principle of compensation or set-off (here, "judicial compensation") ought to extinguish the lesser of the two awards and leave only the balance of the larger as a collectible item; see Planiol, Civil Law Treatise (La. Law Inst. trans.), II, §§ 597-598; Aubry & Rau, Obligations (La. Law Inst. trans.), §§ 325, 326, 328. Otherwise we could have the deplorable spectacle of each party seizing and selling the other's property, adding to the costs and making perverse mockery of a supposedly reasonable legal system.
Yet let us assume that compensation does not occur in judgments (at least where one party alone appeals and the other does not answer the appeal).
Then the question becomes whether, in defending against the sought reversal of the award in her favor, the owner can point out that in part it is not truly an affirmative recovery in her favor, but merely a negative elimination of the recovery erroneously awarded to the subcontractor.
Theoretically, the owner ought not to be able to recover any affirmative judgment against the subcontractor in contract; instead the trial court's judgment should have treated the owner's evidence merely as defeating the subcontractor's claim. But the trial court did give judgment for the subcontractor (although in effect eliminated *791 by the higher judgment against it) and that part of the judgment was not appealed from by the owner. Nevertheless the substance of the owner's judgment, which is appealed from, both negatively eliminates the subcontractor's judgment and affirmatively allows the owner to recover a balance from the subcontractor. But it is only the affirmative recovery which is barred by non-privity and must be deleted.
The affirmative recovery is an error of substance. The negative "recovery" is a mere error of formand it is but one half of the judgment's error of form. C.C.P. art. 2164 requires us to render whatever judgment is just on the record. To correct half of the formal error by eliminating the negative recovery of the owner (which merely cancelled out the other half of the formal error, namely granting "recovery" to the subcontractor) would convert the latter half of the error of form into an error of substance. Such a judgment would be unjust and therefore in violation of C.C.P. art. 2164.
To say that we cannot correct the trial judge's technical error of granting recovery to the subcontractor overlooks the fact that the trial judge himself corrected that error (at least in substance), by converting it into a harmless technical error. The "recovery" to the subcontractor was nullified, in his judgment, by the "recovery" to the owner.
The latter "recovery" is what is before us on this appeal. If that recovery had been equal in amount to the subcontractor's recoveryif the judgment were $795.81 for subcontractor against owner and $795.81 for owner against subcontractor the error would be purely of form. If only the owner appealed from such a judgment, her argument would be that the partial performance and malperformance had no positive value, that she had not been unjustly enriched because the subcontractor's work did not enrich her at all but impoverished her. That would be a technically valid argument, except that the appealed judgment would not impoverish her, because it would not in substance, in truth, allow any recovery to the subcontractor.
The judgment here, from which the subcontractor appeals, does allow an actual recovery to the owner. To that extent, but only to that extent, it errs in substance and it should be reduced to equal the "recovery" it awards to the subcontractor. Then neither will actually recover from the other, although the erroneous form of the judgment will make the contrary appear. To the subcontractor's then complaint that it should not have been cast at all, the owner may properly assert in defense (without, by answer to appeal, making the arrogant demand that the trial judge's harmless error of form should be corrected) that neither should she have been cast at all, but that in substance the judgment (as we should amend it in appellant's favor) will not cast either one.
That is what the substantive law requires, R.S. 9:4806; and that is what the procedural law requires, C.C.P. art. 2164. See also C.C.P. art. 5051.
To the extent it grants the owner a recovery in excess of that awarded the subcontractor, the judgment in the owner's favor should be reduced; and as thus amended it should be affirmed.
(We might also grant further relief to the appellant subcontractor by judicially declaring the reduced judgment against it extinguished by compensation by the equal judgment in its favor, as noted above.)
NOTES
[1] No written contract between the owner and the general contractor was offered in evidence, and although some specifications referring to the job are in the record, the testimony does not reveal whether the general contract was oral or written. As timely recordation of the general contract, and a timely posting of a proper bond, would constitute an affirmative defense regarding the owner's liability under LSA-R.S. 9:4802 et seq., in the absence of a showing to the contrary, and the record is devoid of any evidence showing recordation of the general contract, we must and do conclude the contract was never recorded.
[2] See for example, Walter E. Canulette & Son v. Clesi, La.App., 39 So.2d 853.
[3] Town & Country Contractors v. Henderson, 231 La. 131, 90 So.2d 863; Taylor v. Almanda, 50 La.Ann. 351, 23 So. 365. 365.
[4] Such a statutory exception is LSA-R.S. 9:4812, which forms the basis of this suit against the owner. The statute provides that a contractor who enters into an oral but unrecorded subcontract may obtain a cause of action against the owner of the building upon which he works by filing an appropriate lien document in the public records, irrespective of any lack of privity of contract between himself and the owner of the building.
[5] Keller Construction Corp. v. George W. McCoy & Co., 239 La. 522, 119 So.2d 450; Pennington v. Campanella, La. App., 180 So.2d 882; Chemical Cleaning, Inc. v. Brindell-Bruno, Inc., La. App., 186 So.2d 389.
[6] 234 La. 522, 100 So.2d 493. Appellee also cites Pennington v. Campanella, supra, but in that case the court in finding no proof of damage only assumed the existence of such a tort action for the sake of argument.
[7] See Kendrick v. Mason, 234 La. 271, 99 So.2d 108; Truxillo v. Gentilly Medical Building, Inc., La.App., 225 So.2d 488.
[1] Three justices dissented from refusal of rehearing, and a fourth merely concurred in the original opinion. But no express dissent was made from the explanation of the grant of certiorari.
[2] "On the facts found by the Court of Appeal the result is correct."
[3] This should perhaps be true even for cases procedurally like Morgavi v. Mumme, 254 So.2d 278 (La.App.1971), writ granted 260 La. 12, 254 So.2d 617, where by main and reconventional demands both prospective buyer and seller of land claimed the seller's deposit, made with a third party (who had no interest in it). The trial court rejected both demands (thus leaving the deposit with the disinterested third party, a lawyer). The seller appealed but the buyer neither appealed nor answered the appeal. We did not even discuss the procedural problem. But, evidently, for the appellee to recover the deposit, the unappealed judgment rejecting its claim would have to have been at least ignored, if not reversed.
[4] And the amounts are wrong in any case. If the owner "recovers" full completion cost, the (sub) contractor should "recover" full contract price. Otherwise the owner gets the job done for less than contract price. Here, in respect to the subcontract, she was cast for $675 and awarded $1,600. She would net $925, then pay $1,600 to complete the job. The job would thus cost her only $675 instead of the $1,200 (plus contractor's profit) it was to have cost her.