379 So.2d 62 (1979)
Percy DAVID, Plaintiff-Appellant,
v.
DIXIE RICE AGRICULTURAL CORPORATION, Defendant-Appellee.
No. 7250.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 4, 1980.
Writ Refused March 28, 1980.
*63 Scofield, Bergstedt & Gerard, John B. Scofield, Lake Charles, for plaintiff-appellant.
Cooper & Sonnier, Silas B. Cooper, Jr., Abbeville, for defendant-appellee.
Before CUTRER, STOKER and WARE, JJ.
WARE, Judge.
This is a suit for injunctive relief. Plaintiff, Percy David, seeks an injunction prohibiting the operation of a pump by defendant, Dixie Rice Agricultural Corporation (Dixie), which allegedly renders more burdensome the natural servitude of drain which Dixie enjoys through plaintiff's property. Dixie reconvened, seeking a mandatory injunction requiring plaintiff to remove an alleged obstruction to the natural drainage. After a trial on the merits, the district court rendered judgment denying both requests for injunctive relief. Plaintiff has appealed, and Dixie has answered the appeal, asking that the judgment be reversed insofar as it denies its reconventional demand.
*64 The parties are the owners of contiguous properties located in an area of eastern Cameron Parish commonly known as Klondike. Plaintiff owns an eighty-acre tract on which he resides, farms and raises cattle. Dixie owns approximately 9,000 acres in the Klondike area, including the property abutting the southern and eastern boundaries of plaintiff's property. Dixie's interest in this dispute centers on that portion of its property described as Section 8, Township 12 South, Range 3 West.
It is undisputed that at least a portion of Dixie's Section 8 drains naturally through plaintiff's property and that a natural servitude of drain, therefore, exists. The drainage is accomplished through a slough or maraist, which traverses plaintiff's property in a generally north-south direction and empties into the Klondike Canal to the north. The Klondike Canal connects with and drains into the Mermentau River approximately three miles to the west of that point.
Extending across the slough in an east-west direction is an earthen roadway or cattle walk, which plaintiff uses to transport cattle and equipment from the eastern part of his property to the western part, and vice versa. He testified that when he bought the property in 1944 or 1945, the cattle walk was present and was equipped with a 24" culvert, which facilitated the natural flow of water through it. In the late 1940's, plaintiff excavated a ditch in the slough and installed an irrigation pump on the western side of the cattle walk to bring irrigation water to his farm from the Klondike Canal. At that time, he replaced the 24" culvert with a 36" culvert to improve drainage and permitted Dixie to continue the excavation of the ditch from the south side of the cattle walk to culverts under Louisiana Highway 717, which connect the slough to Dixie's Section 8. In late 1976 or early 1977, plaintiff enlarged the opening under the cattle walk once more by replacing the 36" culvert with a 48" × 48" square metal opening.
Dixie began construction of an extensive drainage system on Section 8 in the summer of 1977. In addition to several large canals, ditches and levees, the system includes a powerful 36" pump, which was installed near the southeast corner of plaintiff's property, where the highway culverts connect Section 8 to the slough. The pump is capable of moving water at a rate of 30,000 gallons per minute. At the trial, Dixie's president, Allen Smith, testified that Dixie planned to install another 24" pump adjacent to the larger pump, which would increase the pumping capacity by about 50%.
The present controversy is the result of Dixie's installation and operation of the pump. Plaintiff contends that its operation renders the natural servitude of drain more burdensome, because water that would not naturally flow through his property is forced through by the pump. Dixie, on the other hand, argues that the servitude of drain existing in its favor entitled it to augment the drainage of rainfall and irrigation water from its property by means of the pump. It further argues that the cattle walk on plaintiff's property is an obstruction to natural drainage and that plaintiff should be required to remove it or provide a larger opening for drainage through it.
The issues presented by this appeal are: (1) whether Dixie's operation of the pump renders the natural servitude of drain more burdensome to the servient estate, and (2) whether the trial court properly denied injunctive relief.
The rights and obligations of the parties with respect to the natural servitude of drain are set out in Articles 655 and 656 of the Louisiana Civil Code which provide:
"Art. 655. Natural drainage
An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow."
"Art. 656. Obligations of the owners
The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome."
*65 As we noted earlier, it is undisputed that a natural servitude of drain exists. How much of Dixie's property drains naturally through plaintiff's is not entirely clear, however. The development of that region for agricultural purposes has brought about the existence of numerous man-made improvements, such as canals, protection levees and powerful irrigation pumps, which greatly affect drainage. Plaintiff testified that from 1938 to 1944, prior to purchasing his own property, he farmed for Dixie the Section 8 property involved in this dispute. He observed at that time that part of Section 8 drained naturally to the north and part of it drained naturally to the south. Dixie maintains that only 40 acres of Section 8 drain to the south, while the remaining 600 acres drain to the north.
In any event, it is clear from the evidence, including a contour map introduced into evidence by Dixie, that all of the property in question, both plaintiff's and Dixie's, is remarkably flat and that whatever natural drainage exists is very poor. Despite Dixie's claim that almost all of Section 8 drains naturally to the north, for a period in excess of 30 years, Dixie has maintained two pumps in the southeast corner of that section, which it uses to pump most of the water accumulating on Section 8 southward through other properties owned by Dixie.
The testimony of Dixie's witnesses shows clearly that the natural flow of water through plaintiff's property ceases when the Klondike Canal backs up and the levels of water in the slough on plaintiff's property and on Dixie's Section 8 are the same. According to Mr. Smith and Mr. Mire, who testified for Dixie, the purpose of the pump is to overcome this phenomenon, and it will only be operated when the natural flow of water has stopped. By pumping water into a large retaining basis with high levees adjacent to the pump, Dixie can produce a sufficient "head" of water to force it to flow through plaintiff's property.
At the time of the trial, the pump had been operated extensively on only one occasion, which was in June of 1978. The area had received eleven inches of rain over a two-day period, as a result of which the levels of water in the Klondike Canal and on plaintiff's property were suddenly quite high. While the parties disagree on the effect that the operation of the pump had, it is clear that there was an increase in the depth and velocity of the water flowing through plaintiff's property and that plaintiff suffered some damage as a result of it.
It has long been recognized that the owner of an upper estate may dig such ditches and canals as may be necessary for the agricultural development of his property even when it results in a more concentrated or more rapid flow of water through the lower estate. Broussard v. Cormier, 154 La. 877, 98 So. 403 (1923); Chandler v. City of Shreveport, 169 La. 52, 124 So. 143 (1929); Nicholson v. Holloway Planting Company, 255 La. 1, 229 So.2d 679 (1969). However, it has also been uniformly held that the dominant estate cannot thrust upon the servient estate waters that would not arrive there by natural drainage.
Under these circumstances, we believe that it is clear that Dixie's operation of the pump will render the natural servitude of drain more burdensome. The servient estate will be forced to receive water that would not normally be flowing at a time when it can least afford to do so (i. e., when the water levels on the servient estate and downstream of it are high). Although Dixie has attempted to play down the potentially harmful effects of pumping water onto plaintiff's property in the manner described, we believe that plaintiff has established that Dixie's activities pose a serious threat to his peaceful enjoyment and use of his land.
The trial judge's written reasons for judgment suggest that he also found that the servitude would be rendered more burdensome by Dixie's operation of the pump. Nevertheless, he held that plaintiff was not entitled to injunctive relief because he had failed to show that he might suffer irreparable harm if the injunction was not issued, as required by LSA-C.C.P. Art. 3601. Plaintiff contends that irreparable injury *66 was shown and further argues that even if it wasn't, he is entitled to injunctive relief under LSA-C.C.P. Art. 3663, which provides in pertinent part:
"Injunctive relief, under the applicable provisions of Chapter 2 of Title I of Book VII, to protect or restore possession of immovable property or of a real right, is available to:
(2) A person who is disturbed in the possession which he and his ancestors in title have had for more than a year of immovable property or of a real right of which he claims the ownership, the possession, or the enjoyment."
Plaintiff correctly argues that Article 3663 specifically affords him the remedy of an injunction and that the showing of irreparable injury required of applicants for injunctions under Article 3601 is, therefore, unnecessary. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Chapman v. Fisher, 370 So.2d 162 (La.App. 3rd Cir. 1979).
Dixie contends that Article 3663 is not applicable because this is neither a possessory nor a petitory action. We disagree. The official comments to that article provide in pertinent part:
"(b) Injunctive relief is made available in two separate and distinct types of cases: (1) as an ancillary remedy in a possessory action; and (2) as the relief to be granted in an injunction suit brought to enjoin trespassers and other disturbers, and which is neither a possessory nor a petitory action. See Churchill Farms v. Gaudet, 184 La. 984, 168 So. 123 (1936)." (Emphasis added)
We also disagree with Dixie's argument that there has been no disturbance of plaintiff's possession because its employees did not enter upon his land. By operating the pump in June of 1978, Dixie caused the water in the slough to rise and inundate part of plaintiff's property. In addition, the velocity of the water which traveled over his cattle walk caused some of the soil to be irretrievably washed away. His possession of his property was clearly disturbed as effectively as if the acts of Dixie's employees had been committed on his land.
In light of the above, we conclude that the trial court erred in denying plaintiff's claim for injunctive relief under LSA-C. C.P. Art. 3663. The only remaining issue is whether the trial court also erred in denying Dixie's reconventional demand for a mandatory injunction requiring plaintiff to remove his cattle walk or provide a larger opening for drainage through it.
Dixie maintains that the cattle walk is an obstruction to natural drainage. The trial judge's written reasons for judgment do not indicate whether he made a finding on that point. The reason assigned for his denial of Dixie's request was that Dixie had not made the showing of irreparable injury required by LSA-C.C.P. Art. 3601. We agree with that conclusion, however, we note that despite its arguments with respect to plaintiff's right to injunctive relief under LSA-C.C.P. Art. 3663, Dixie has argued on appeal that it too is entitled to injunctive relief under that provision. Thus, Dixie apparently argues that the alleged obstruction to the natural drainage has resulted in a disturbance of its possession of its property.
We agree that the creation or maintenance of an obstruction to natural drainage, which causes water to accumulate and remain on an estate, could constitute a disturbance of the possession of that property. However, we do not agree that plaintiff's cattle walk obstructs natural drainage. It was clearly shown that despite Dixie's construction of drainage ditches and canals on its property, the natural drainage of water from that property is a relatively slow process. We believe that plaintiff established by a preponderance of the evidence that he has provided a sufficient opening through his cattle walk to prevent it from impeding the natural drainage of water through his property.
For the above and foregoing reasons, the judgment is affirmed insofar as it denies the reconventional demand of Dixie Rice Agricultural Corporation. It is reversed insofar as it denies the petition for injunction by plaintiff, Percy David.
*67 IT IS ORDERED, ADJUDGED AND DECREED that defendant, Dixie Rice Agricultural Corporation, is hereby permanently enjoined, restrained and prohibited from operating its pump located in the Northwest Quarter of the Northwest Quarter (NW ¼ of NW ¼) of Section 8, Township 12 South, Range 3 West, Cameron Parish, Louisiana, in such a manner as to disturb plaintiff's possession of his property.
All costs of this appeal are assessed against defendant, Dixie Rice Agricultural Corporation.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.