405 So.2d 314 (1981)
TERREBONNE PARISH POLICE JURY
v.
Carroll MATHERNE.
No. 81-C-0531.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 9, 1981.
*315 A. J. Gray, III, Camp, Carmouche, Palmer, Barsh & Hunter, Lake Charles, H. Minor Pipes, Sr., Pipes & Pipes, Houma, for defendant-applicant.
Michael J. Samanie, Houma, for plaintiff-respondent.
DENNIS, Justice.
The question presented for our decision is whether a parish governing authority may have a landowner enjoined from diverting his property's drainage from its natural flow and destination into a parish drainage project because the diversion of the natural drain impairs the efficiency of the public drainage system and contributes to the flooding of homes. The district court granted an injunction and the court of appeal affirmed. We granted certiorari to determine whether the action below constituted a taking or damaging of property for a public purpose without just compensation. We affirm. An injunction preventing a landowner from diverting the natural drain of his property is not a taking or damaging of his property because he has no right to do anything to render the natural servitude of drain more burdensome upon the estates situated below. The parish governing authority was entitled to have the landowner's unlawful acts enjoined in order to prevent irreparable injury to its drainage project.
The Terrebonne Parish Police Jury completed in December, 1979 Forced Drainage Project No. 1-1A. This project was designed to drain about 1700 acres and provide flood control for roughly 2200 residents.
*316 Carroll Matherne owns an 800-acre tract of agricultural land south of the project area. The northern boundary of his land is formed by "Canal C," an artificial, non-navigable drainage canal constructed many years ago by one of his ancestors in title. The canal which serves as a public drainage channel for the project also forms its southwestern boundary. Matherne's property, which is mostly farmland, was not included within the project.
On April 12 and 13, 1980, heavy rains of approximately eleven inches drenched the area causing severe flooding. When the drainage system failed to perform satisfactorily, employees of the police jury inspected the drainage channels and found two large ditches on defendant's property emptying substantial quantities of water into Canal C. Matherne had cut the ditches only a few weeks before. Since the flow from Matherne's new ditches appeared to contribute substantially to the prolonged flooding in the project area, the police jury blocked the ditches on April 16 and 17. After closure of the cuts, standing water in the residential area within Project 1-1A subsided as much as twelve inches in twelve hours. Matherne reopened one of the two ditches, began digging a third ditch, and ordered parish employees from his property when they attempted to close them. The police jury obtained a temporary restraining order enabling it to reclose the new ditches and to prevent further resistance by defendant until a hearing could be held.
After a full hearing, the trial court granted a preliminary injunction. The trial judge in his written reasons found that before Matherne cut the new ditches only 120 of his 800 acres drained into Canal C. By reversing the drain of additional portions of his property, the trial judge found, the defendant had introduced substantially more water into the forced drainage project than it was designed to handle. The trial court concluded that La.R.S. 38:113 entitled the police jury to injunctive relief to prevent defendant from destroying the integrity of the drainage system and doing irreparable harm to residents within the project area.
Matherne appealed and the court of appeal affirmed the preliminary injunction judgment. 394 So.2d 1302 (La.App. 1st Cir. 1981). The court of appeal held that by authority of La.R.S. 38:113 the police jury had acquired a limited servitude to control and maintain Canal C as a public drainage channel extending for a space of 100 feet on each side of the channel; that the police jury may take any appropriate measures for the preservation of the efficiency of the drainage channel; that, because Canal C is part of a parish drainage project, the police jury may enjoin the activity of a landowner outside the project which overloads the drainage channel and thereby reduces its efficiency as part of the drainage project; and that, if the police jury has taken or damaged Matherne's property, he must pursue other available remedies outside the injunction proceeding.
We granted certiorari because of our concern that the lower courts' sweeping interpretation of a local government's powers under La.R.S. 38:113 impinges upon individual citizens' rights to own, use and enjoy private property. Our review convinces us that the trial and appellate courts' statutory construction is partially incorrect, but we conclude that the judgments should be affirmed on other grounds, although the language of the injunction must be restricted somewhat.

1.
Property may not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. La.Const. art. I, § 4. In every expropriation, a property owner has the right to a trial by jury to determine compensation and the right to be compensated to the full extent of his loss. Id. Due process of law guarantees a property owner a judicial review of whether the government acted arbitrarily, capriciously, or in bad faith in determining that the taking or damage of property was necessary. State, thru Dept. of Highways v. Olinkraft, Inc., 350 So.2d 865 (La.1977). Cf. State, thru Dept. of Highways v. Jeanerette *317 Lumber & Shingle Co., Ltd., 350 So.2d 847 (La.1977).
La.R.S. 38:113 provides:
"The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels."
La.R.S. 38:113, by its terms, merely authorizes a levy or drainage district to preserve and maintain the efficiency of public drainage channels within its districts. Undoubtedly, the local governing body may exercise its power to prevent obstruction of the channels and to perform ordinary maintenance necessary for the efficient operation of the canals and ditches. When necessary for these purposes, the authorities may send their workers and equipment on to private property along public drainage channels for a space of 100 feet on each side of the channel. The legislative aim was a modest one, viz., to enable levy and drainage authorities to keep the public drainage channels within their districts clear and in good working order. See Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La. App. 3d Cir. 1977); Grayson v. Comm'rs of Bossier Levee Dist., 229 So.2d 139 (La.App. 2d Cir. 1969); Scott v. Red River-Bayou Pierre Levee & Drainage Dist. of La., 7 So.2d 429 (La.App. 2d Cir. 1942).
The statute does not authorize the taking or damaging of private property without just compensation or without due process of law; nor do we think the legislature could do so constitutionally. Accordingly, we must reject the lower courts' interpretation of La.R.S. 38:113 as an impingement upon an individual's constitutional right to property and as unjustified by the words of the statute. The statute does not authorize the governing authority to enjoin activities on private property which do not have the effect of obstructing a public drainage channel or impeding its maintenance. The act certainly does not enable a local government to take or damage property rights by way of injunction. See, Plaquemines Parish Comm'n Council v. Hero Lands Co., 388 So.2d 790 (La.1980). It may be desirable and in the public interest to take property or prevent its enjoyment in order to promote the overall efficiency of a drainage system. The lawful method, however, is through expropriation and not by enjoining an owner from use of his property rights. See Arkansas Louisiana Gas Co. v. City of Minden, 341 So.2d 607 (La. App. 2d Cir. 1977).

2.
The injunction preventing Matherne from diverting the natural drain of his property was not a taking or a damaging of his property, however, because he had no right to do anything to render the natural servitude of drain more burdensome on estates situated below. Under the conception of our law, the right to drain water from one's property over the lands of others is not a prerogative of ownership but a real right of servitude requiring a dismemberment of the ownership of others or a charge laid on their immovables. La.C.C. art. 646, et seq., 1977 La.Acts, No. 514, Exposé des Motifs.
The articles of the code governing the servitude of drain, in pertinent part, provide:
Art. 655. An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow. (Acts 1977, No. 514).
Art. 656. The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome. (Acts 1977, No. 514).
Our jurisprudence has established a consistent interpretation of these precepts. The owner of the lower lands of two *318 estates can do no act which would impede the natural flow of waters on his lands from those of the higher estate. The owner of the dominant estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To that end, he may cut ditches and canals by which the waters running on his estate may be concentrated, and their flow increased beyond the slow process by which they would ultimately reach the same destination. But the owner of the dominant estate cannot improve his lands to the injury of his neighbor by diverting waters from their natural flow, and concentrating them so as to flow on the lower lands of the servient estate at a point which would not be their natural destination, thus increasing the volume of water which would by natural flow run over or reach any portion of the servient estate, and to thus render the servitude due by the estate below more burdensome. E. g., Nicholson v. Holloway Planting Co., Inc., 255 La. 1, 229 So.2d 679 (1969); Broussard v. Cormier, 154 La. 877, 98 So. 403 (1923); Ludeling v. Stubbs, 34 La.Ann. 935 (1882); Guesnard v. Executors of Bird, 33 La.Ann. 796 (1881); David v. Dixie Rice Agricultural Corp., 379 So.2d 62 (La.App. 3d Cir. 1979), writ denied, 382 So.2d 166 (La.1980).
Testing the facts of this case by the codal precepts as thus interpreted, we conclude that Matherne's efforts to alter the natural drainage of his land exceeded his lawful rights as owner of a dominant estate. By cutting new ditches through the natural ridge bordering Canal C, Matherne diverted the drainage from most of his estate away from its natural flow, prevented it from reaching its natural destination and rendered more burdensome the servitudes due by the lower estates receiving Canal C's water by substantially increasing its volume.

3.
Because the record does not establish that the police jury was owner of a servient estate or neighboring property overburdened or damaged by Matherne's activities, we initially questioned the governing authority's standing to bring this suit. After considering the problem, however, we conclude that the police jury has standing to sue and is entitled to injunctive relief.
A party seeking an injunction must have standing to sue or, more comprehensively, the action must present a justiciable controversy. Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); Cf. Maraist, Work of Appellate Courts1974-1975, 36 La.L.Rev. 556; Moore, Federal Practice, § 65.17. To have standing the plaintiff must assert an adequate interest in himself, which the law recognizes, against a defendant having a substantial adverse interest. La.C.C.P. art. 681; La. Hotel-Motel Ass'n, Inc. v. Parish of East Baton Rouge, 385 So.2d 1193 (La.1980); Hainkel v. Henry, 313 So.2d 577 (La.1975); Abbott v. Parker, 259 La. 279, 249 So.2d 908 (La.1971). The fact that the plaintiff may suffer damage will not suffice unless he has a right, which the law will recognize, to be immune from damage by the defendant. League of Women Voters v. City of New Orleans, 381 So.2d 441 (La.1980); Abbott v. Parker, 259 La. 279, 249 So.2d 908 (La. 1971); Moore, Federal Practice, § 65.17.
The police jury in this case has a right, which the law has recognized, to be immune from damage by Matherne's actions in overburdening the natural servitude of drain. The governing body is authorized to adopt rules and regulations for preserving the efficiency of channels within its drainage district. La.R.S. 38:113. In aid of this local government power, the legislature also enacted criminal sanctions prohibiting obstruction of drainage channels, La.R.S. 38:219, or "[d]rain[age] into channels by natural or artificial inlets except under regulations prescribed by the district, ..." La.R.S. 38:219(6). By analogy to these criminal statutes we conclude that the police jury enjoys a substantive civil right to be immune from damage to its public works project by excessive, unlawful drainage into its system. Boyer v. Johnson, 360 So.2d 1164 (La.1978); Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (La.1970); Cf. A. Yiannopoulos, Louisiana Civil Law System, 153 (1977). As we noted earlier in this opinion, these statutes cannot authorize the police jury to take or damage property without just compensation. The *319 regulation or prohibition of drainage into a public system that is not authorized by a natural servitude or other legal right, however, does not constitute a taking or damaging of property.
La.C.C.P. art. 3601 provides that an injunction shall issue where irreparable injury, loss or damage would otherwise result to the applicant. Irreparable injury is considered to be a loss sustained by an injured party which cannot be adequately compensated in money damages or for which such damages cannot be measured by a pecuniary standard. Pennington v. Drews, 209 La. 1, 24 So.2d 156 (1945); City of Lake Charles v. Lake Charles Ry., L. & W. Co., 144 La. 217, 80 So. 260 (1918). Matherne's unauthorized activity on his land caused a dramatically increased flow of water into the forced drainage system which significantly reduced the ability of the system to drain the watershed area quickly and efficiently. The system had not been designed to drain the bulk of defendant's agricultural property and Matherne's unilateral decision to use it for this purpose rendered the entire project inadequate to protect residential property it was designed to serve. Furthermore, Matherne testified that he would reopen the ditches if not enjoined from doing so.
Under these circumstances, the record sufficiently demonstrates the police jury's standing to sue and the potential irreparable damage to its drainage system that will result in the absence of injunctive relief. The language of the trial judge's injunction must be modified, however, to conform with a narrower view of the police jury's authority. The judgment is amended as follows:
It is decreed that a preliminary injunction issue against Carroll J. Matherne, prohibiting him, his agents, employees, and servants from unblocking the large drainage ditches blocked by the Terrebonne Parish Police Jury, from digging other such ditches in the future, and from diverting waters from his property into "Canal C" a/k/a Bayou Tecon which would not otherwise naturally flow into that canal.
AMENDED AND AFFIRMED.
LEMMON, J., concurs and assigns reasons.
DIXON, C. J., dissents with reasons.
LEMMON, Justice, concurring.
Prior to the drainage project undertaken by the Police Jury, a system of ditches had drained part of Matherne's property into Canal C. Matherne contends that a spoil levee placed along the bank of Canal C during the construction of the project blocked that pre-existing drainage and that he merely unblocked the blockage caused by placement of the spoil levee. If these were the complete facts shown by the record, then I would agree with his contention that he had the right to remove the spoil levee constructed without a servitude being expropriated or obtained by contract.
However, the record further establishes that Matherne also cut new ditches across a ridge south of Canal C. Prior to that action only 120 acres drained into Canal C, whereas after that action most of the remainder of the 800-acre tract also drained into the canal. Therefore, that action by Matherne did render the servitude of drainage more burdensome on the servient estate, and the Police Jury properly sought to halt the increased flow resulting from Matherne's action.
Nevertheless, Matherne apparently still has an action for damages caused by the unauthorized taking or damaging of his property in the course of constructing the drainage project.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
I do not understand that there is any evidence in this record that Matherne's action renders the servitude of natural drain owed by any estate below Matherne's more burdensome.