Dear Mr. Craton:
You have asked for an opinion from this office regarding the rights and obligations of the Drainage District and the property owners relative to a natural drainage ditch located in Acadia Parish, Louisiana.
The information you provided indicates that the ditch in question has been certified as a natural drain and a portion of said ditch has been filled in by one or more of the owners of the property over which a portion of the drain traverses. Specifically, the landowner to the north along the drain (landowner A) and the contiguous landowner to the south (landowner B) have filled in a portion of the drain for a distance of approximately 200 feet.
Your opinion request is unclear as to the impact of the filling in of the approximately 200 feet of ditch. It can be interpreted to say that there is drainage into the ditch upstream of the filled in area and this flow, along with the flow from properties A and B, re-enters the ditch below the fill point, continues on a southerly flow in the course of the natural drain and then leaves property B. It also implies that the 200 feet of fill area crosses the boundary line between properties A and B.
Addressing your specific questions in the order presented;
1. Is the Drainage District required to go back and dig out the two hundred feet that was filled in by the property owners?
The general rule regarding natural drains is articulated in Article 655 of the Civil Code. "An estate situated below is bound to receive the surface waters that flow naturally from an estate situated above unless an act of man has created the flow." The intent is to preserve the status quo as it exists in nature. The continued existence of the servitude of drain established by this Article is subject to a number of exceptions, however.
The authority of the Drainage District with regard to natural drains is not exclusive. The drain in question is on private, agricultural lands and it is well settled in the jurisprudence of this state that when engaged in agricultural development the dominant estate may make necessary or useful constructions including altering the manner by which waters are gathered and delivered to the servient estate. Article 729 of the Civil Code provides that a "legal and natural servitude may be altered by agreement of the parties if the public interest is not affected adversely." This appears to be the case between landowners A and B. This Code Article, read in conjunction with R.S. 38:218, which expressly permits diverting or impeding the flow of a natural drain so long as the flow is returned to its natural course before leaving that estate, would permit landowner A and B to jointly farm their property and make the constructions necessary regarding this drain to more effectively manage their properties. The prohibitive language of R.S.38:215 is directed to the owner of the servient estate, the property to the south of landowner B, to prohibit obstructions to the servitude of drainage burdening that property and cannot be read as a blanket prohibition given the language of R.S.38:218 and Article 729. Since it is clear that landowners A and B are permitted to make the agreement concerning their two properties, assuming the public interest is not impacted negatively and the waters return to their natural course before leaving the property of landowner B, there would be no obligation on the part of the Drainage District to do anything with regard to the drain as currently configured.
2. If the drain has to be dug out can the costs be charged to the parties responsible for obstructing the drain?
Since our analysis of the situation as presented is that there is no responsibility on the part of the Drainage District to dig out the obstruction, this question does not require a specific response. However, should the facts not be as stated and the obstruction of the drain is such that it increases the burden on the servient estate then the owner of that estate has a right to seek injunctive relief and/or damages. The provisions of Title 38 dealing with natural drains and the authority of the Drainage District provide for fines or imprisonment for violations of those statutes. No provision is made for undertaking the cleanout and then assessing those costs back to the landowner. The case law has permitted the burdened estate to exercise self-help in certain circumstances and that landowner would then have a damage claim which included those cleanout costs.
3. Is there any exposure on the part of the Drainage District in the future if the ownership of tracts A and B changes and the new owners complain?
The question assumes a situation where one of the tracts is sold to an unrelated party and they no longer care to continue the joint farming arrangement currently existing between owners A and B. It would only be relevant if the assumption made above in fact exists; i.e., the filled area of the drain crosses the property line between tracts A and B. If not, then the drainage from A to B would be taking its natural course, there would be not violation of the servitude and it would run with the land.
It is a question of fact whether the actions of the owner of the dominant estate exceeds his rights and increases the burden on the servient estate. Civil Code Article 656 states that "The owner of the servient estate may not do anything to prevent the flow of the water. The owner of the dominant estate may not do anything to render the servitude more burdensome."
The owner of the servient estate is under a heavier burden than the owner of the dominant estate. The case law has consistently upheld a more flexible standard for the dominant estate. The general restrictions on the dominant estate are that the dominant estate cannot add to the volume or velocity of the water that would naturally have flowed onto the servient estate and he cannot divert the waters onto the servient estate at a point that would not have been their natural destination. See, Ludeling v. State, 34 La. Ann. 935 (1882); Parish of East Baton Rouge v. Pourciau, 387 So.2d 645 (1st. Cir. 1980); Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (1981).
In the event that the drainage is obstructed across the property line and then one or both of the tracts are sold to third parties, it is our opinion that this would not create any exposure for the Drainage District. In the case of the sale of tract B to a third party, it is not reasonable to conclude that the new owner would purchase the property without knowledge of the drainage configuration and then successfully argue that said drainage is actually a flow caused by the act of man and destroy the servitude of drainage. If the parties do not wish to continue the agreement for joint farming and the configuration of the drain then each would bear the cost of returning the drain to its natural course on their respective parcels. This would not be the responsibility of the Drainage District. The District may become involved if the drainage is blocked by the acts of either party after the fact of sale, but this would be limited to the exercise of the express powers granted by the above referenced statutes.
The same situation applies in the case of a sale of tract A. The new owner could make whatever changes he deemed necessary as the dominant estate so long as the flow returned to its natural course prior to entering tract B and no problems with increased velocity or volume of water are created. This may necessitate some modifications to the drainage constructions on tract B so that the flow is not impeded but that would by the responsibility of the owner of tract B under the provisions of Article 656.
We hope that the above is responsive to your specific requests, however should you have any additional questions or comments please contact the undersigned at your convenience.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT B. BARBOR Assistant Attorney General