351 So.2d 271 (1977)
Mrs. Lee DUGAS, Plaintiff-Appellant,
v.
ST. MARTIN PARISH POLICE JURY, Defendant-Appellee.
No. 6108.
Court of Appeal of Louisiana, Third Circuit.
October 17, 1977.
Rehearing Denied November 10, 1977.
*272 Davidson, Meaux, Sonnier & Roy, by L. Lane Roy, Lafayette, for defendant-appellant.
Edwards, Stefanski & Barousse, by Jean Pierre Lendais, Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, WATSON and FORET, JJ.
FORET, Judge.
Plaintiff, Mrs. Lee Dugas, brought this suit against the St. Martin Parish Police Jury seeking damages resulting from defendant's cleaning, clearing, and widening of her alleged private drainage ditch across her property adjacent to the Isle Labbe Road in St. Martin Parish. In her prayer for judgment, plaintiff sought damages for loss of the 1975 crop and for mental pain and suffering; in the alternative, for compensation for land expropriated, for damages to her adjacent property, and for loss of future crops.
Prior to the time of the alleged incident, pursuant to a February 27, 1968, resolution of defendant, St. Martin Parish Police Jury, the drainage ditch in question had been designated as Public Drainage Channel No. L-30-C. That designation and resolution was accepted on April 16,1973, by the Louisiana Department of Public Works.
Trial of this matter was of long duration. It was held on May 27 and June 2, 1976. Thereafter two motions for a new trial were filed, both of which were partially granted. The first new trial, dated September 28, 1976, was limited to the extent of damages to plaintiff's remaining adjacent acreage; the second, to the extent of work required to prevent the future flooding of plaintiff's property.
The various rulings of the trial judge were to the effect that the ditch in question, "the Dugas Ditch", was a public drainage channel; that, pursuant to LSA-R.S. 38:113, defendant possessed a servitude to maintain and clean it; that defendant had merely cleaned the ditch, and had not expropriated any land from plaintiff; that plaintiff's remaining land was damaged to the extent of $10,050.00; that plaintiff was not entitled to an award for damages to the 1975 crop and to any future crops; and that plaintiff was not entitled to recover damages for mental anguish resulting from the conduct of defendant. From such judgments, defendant appeals, contending that the preponderance of the evidence is to the effect that plaintiff's property did not flood as a result of defendant's actions, and that the trial court erred in awarding damages to plaintiff. Plaintiff answered the appeal, alleging that an expropriation had occurred, that she was entitled to damages for mental anguish, and that defendant's appeal was frivolous.
*273 For his analysis of the legal issues presented, and in his reasons for judgment, the trial judge reviewed the history and legislative intent of LSA-R.S. 38:113 and the jurisprudence thereunder. We partially adopt his reasons for judgment and quote from same.
". . . The case centers around an interpretation of Section 113 of Title 38 of the Revised Statutes.[1] And the way that Statute reads, if you take out the language that's not pertinent to this case, is this way:
"Drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel selected by the district and recommended and approved by the Department of Public Works for preserving the efficiency of the drainage channels. (Tr., pg. 144)
"Number One, what's the meaning of a drainage district? I think it's clear in the law that in this particular case it applies to the St. Martin Parish Police Jury and that body is a drainage district within the meaning of that Statute. And I refer counsel to Section 1798.1, sub-paragraph 1, of Title 38[2] of the Revised Statutes for that definition. That means then that all public drainage channels within the limits of St. Martin Parish come within the control of the St. Martin Parish Police Jury for purposes of Section 113; and it means then that the St. Martin Parish Police Jury shall have control over all public drainage channels within St. Martin Parish for preserving the efficiency of the drainage channels. That's going back to the language of Section 113. (Tr., pg. 144,145)
"It's the opinion of the court that Section 113 of Title 38, which has been law and which has read essentially the same since Act 61 of 1904 was adopted, creates and establishes a very limited servitude and obviates the necessity of expropriation, if a channel is in fact already a public drainage channel. . . . (Tr., pg. 145)
"The key then is whether the channel is an existing public drainage channel because that is the only kind covered by Section 113 of Title 38. If it's not, then expropriation is necessary to acquire a drainage channel that is not already public. I would cite as authority for that, in addition to what I have just said, the ancient case of Petit Anse Coteau Drainage District versus Iberia & Vermillion Railroad Co., an opinion by the Louisiana Supreme Court in 1909, which is found in [124 La. 502,] 50 So. at Page 512 (Tr., pg. 146)
"Let's look now to a definition of public drainage channel to see if the drainage ditch in this case, which was always referred to as the "Dugas Ditch", comes within the meaning of the public drainage channel. I find no explicit definition in the law of this State of a public drainage channel. The conclusion I've reached, I've gleaned from several sources. One is Section 215 of Title 38[3], which defines drainage as any *274 natural drain or artificial drain which has been used for purposes of drainage for at least ten years. In the case of Scott versus Red River-Bayou Pierre Levee and Drainage District of Louisiana, a 2nd Circuit decision, reported in [La.App.] 7 So.2d 429, the court said that for purposes of Act 61 of 1904, which is, as I said, R.S. 38:113, that for those purposes it's immaterial whether it's a natural drain or an artificial drain as long as it's maintained for many years as a drainage ditch. That's how that court defined a public drainage channel within the meaning of Section 113. In the Petit Anse Case which I referred to earlier, the Louisiana Supreme Court in considering Act 61 of 1904, defines public drainage by distinguishing public drainage from drainage affecting only the interests of particular individuals. The converse of that is that public drainage is drainage affecting the interests of other than particular individuals; that is, individuals in general and the public. (Tr., pg. 146-147)
"The court feels that with regard to the public nature of the ditch, the evidence preponderates in favor of the defendant, the St. Martin Parish Police Jury, for several reasons. . . . I still think it fits the definition of a public drainage channel for the reason that it flows onto the land of another, and involves the interests of other than particular individuals; that it's ancient and fits the other definitions with regard to age, notwithstanding the fact that almost certainly it was originally dug by Mr. Lee Dugas, and is not natural. The question that bothered the court much more was the connection of that ditch to the drainage ditch which runs alongside the public road which has been commonly referred to as the "Isle Labbe Road". In that regard also, the court feels that the evidence preponderates in favor of the Police Jury. . . . (Tr., pg. 148)
"We move now to the question of damages. The court finds that notwithstanding the legal right of the Police Jury to enter this property without trespassing and without the necessity of expropriation, still if it causes damage, it is obligated to pay for it to the plaintiff, that is because the plaintiff is the only one who has brought this action against the Police Jury. . . . (Tr., pg. 149, 150)
"First, there's the 1975 crop. The court finds that the plaintiff is entitled to no relief here. There was damage to the crops from the evidence, but it wasn't caused to the plaintiff. It was caused to her tenant who did not bring this action and although the court may have some sympathy for Walter Champ's loss in this case, he didn't bring an action and the Police Jury is not required to defend something that's not before the court. . . . (Tr., pg. 150)
"The next item is the land taken. The court finds that there's no justification for allowing plaintiff any relief on this, particularly in view of my earlier comments about there being no necessity for expropriation. The ditch was already there. There was some evidence that the ditch had been widened. That evidence was greatly contradicted and besides that, there was no evidence presented of how much it had been widened, if in fact it had been widened. The court would have no way of assessing damages here. It cannot compensate plaintiff for loss of a ditch or loss of land that was already not there, and has no way of determining what quantity of additional land was taken. . . . (Tr., pg. 151)
"We now move to what plaintiff terms as the land wasted. . . . Where plaintiff *275 can prove that because of the Police Jury's acts, she experienced damage to her land apart from the ditch, then the court finds that it must be compensated for. . . . But the court must determine whose evidence preponderates. In this instance the court feels it preponderates in favor of the plaintiff. (Tr., pg. 151-152)
". . . There was only one expert on value in this case. He testified that assuming that the overflow of that ditch caused the damage, caused the flooding, and assuming that that was a circumstance that had not happened before 1975, but happened because of the work done by the Police Jury, that six (6) acres of land were affected. Based on the evidence, the court has to conclude that this circumstance is likely to recur in the future, and that there's a diminution in the value of those front six (6) acres. As stated, the court has only one expert to base the value of this diminution on. Mr. Babineaux testified that those front six (6) acres were all suitable for homesites, rural homesites, and that they would have a value of $3,000.00 an acre. That comes to $18,000.00. He feels that assuming what he did assume, that the use of the land would now be limited to basically pasture land[;] I think he stated that low pasture land, which would have a value of $1200. an acre; the difference between the two is $11,000.00. He deducted from that figure the area of land within the ditch, which he estimated at a quarter of an acre. I feel that has to be deducted, because there's no damage to the ditch. It already existed. . . ." (Tr., pg. 152-153)

I

FLOODING AND DAMAGES THEREFOR
At trial, there was testimony adduced that plaintiff's property was flooded as a result of defendant, St. Martin Parish Police Jury's deepening and widening of the Dugas Ditch. Plaintiff Dugas, and Mr. and Mrs. Sidney Dubois, Jr., relatives of plaintiff and adjacent landowners, testified that until the Dugas Ditch had been worked on by defendant, no flooding had occurred on plaintiff's property. (Other testimony, that of Cliff Durand, Jr. and M. C. Greig, Parish Supervisor, was to the opposite effect.) There was uncontradicted testimony from Preston Babineaux, accepted as an expert appraiser, as to the value of plaintiff's land and as to the loss in value thereto as a result of the flooding.
We cannot disturb that finding of the trial judge. There was a substantial evidentiary basis from which the trial judge could rule that plaintiff's property flooded as a result of the actions of defendant, St. Martin Parish Police Jury, and that $10,050.00 was the extent of such damages. Canter v. Koehring Co., La.App., 283 So.2d 716 (1973).

II

EXPROPRIATION
As correctly mentioned by the trial judge, LSA-R.S. 38:113 creates a very limited servitude by which a drainage district or political subdivision possessing those powers is given control over the area of land within one hundred feet on either side of a public drainage channel for the purpose of preserving the efficiency of a drainage channel. It does not, however, vest the political district with ownership of the drainage channel. Arkansas-Louisiana Gas Co. v. City of Minden, 341 So.2d 607 (La. App. 2 Cir. 1977); Daspit v. State, Dept. of Highways, 325 So.2d 368 (La.App. 3 Cir. 1975); Justice v. Bourgeois, 288 So.2d 106 (La.App. 4 Cir. 1974); Scott v. Red River-Bayou Pierre Levee and Drainage Dis. of Louisiana, 7 So.2d 429 (La.App. 2 Cir. 1942). The ownership thereof must be acquired by the political authority when so desired.
From the record, we find conflicting testimony as to whether or not the Isle Labbe Ditch was connected to the Dugas Ditch. Plaintiff, Mrs. Lee Dugas, and Mr. & Mrs. Sid Dubois, Jr. (plaintiff is Mr. Dubois' great aunt), adjacent landowners, stated that the Dugas Ditch, dug by Mr. Lee Dugas in about the year 1956, was not connected *276 to the Isle Labbe Ditch. Mr. Herman Bienvenu, accepted as an expert civil engineer, testified that he was the Project Engineer for construction and/or repair on the Isle Labbe Road in 1946, and that, at that time, the two ditches were connected. Mr. Cliff Durand, Jr., an adjacent landowner for the past thirteen years, testified that the two ditches were connected at the time in which he purchased his homesite. Mr. Dale Vincent, St. Martin Parish deputy sheriff and an adjacent landowner, said that water flowed from the Isle Labbe Ditch into the Dugas Ditch prior to the spring of 1975. Mr. Antoinne Chataignier, an employee of defendant's for the past thirty-seven years, testified that the two ditches had been connected for over thirty years.
We believe that defendant acquired a servitude of aqueduct or drain over the Dugas Ditch situated upon the property of plaintiff. A servitude of aqueduct or drain is "the right by which one [defendant] conducts water from his estate [Isle Labbe Road Ditch] through the land of his neighbor [plaintiff] by means of an aqueduct or ditch". LSA-C.C. Art. 724. That servitude was acquired by a political entity, the St. Martin Parish Police Jury, whose authority included that of establishing servitudes on its lands. LSA-C.C. Art. 759. It was acquired by the uninterrupted ten-year use of an apparent and continuous servitude, an aqueduct constructed on plaintiff's property by her deceased husband. C.C. Art. 727, 728, 765; Wild v. LeBlanc, 191 So.2d 146 (La.App. 3 Cir. 1966); Acadia-Vermilion Rice Irrigation Co. v. Broussard, 175 So.2d 856 (La.App. 3 Cir. 1965).

III

DAMAGES FOR MENTAL ANGUISH
Plaintiff-appellant Mrs. Lee Dugas asserts that the trial court manifestly erred when it denied to her an award for damages for mental anguish and distress caused by the deepening and widening of the Dugas Ditch by defendant St. Martin Parish Police Jury.
According to Louisiana jurisprudence as regards an award for mental anguish as a result of damage to property, recovery is normally permitted in but four instances: (1) property is damaged by an intentional or illegal act; (2) property is damaged by acts for which the tort-feasor will be strictly or absolutely liable; (3) property is damaged by acts constituting a continuous nuisance; (4) property is damaged at a time in which the owner thereof is present or situated nearby and the owner experiences trauma as a result. Fair v. Johnson, 308 So.2d 884 (La.App. 2 Cir. 1975), writ refused, 310 So.2d 854, and cases cited therein.
In this case, there was no illegal act, no act by which the St. Martin Parish Police Jury would be strictly or absolutely liable, and no continuing nuisance. Defendant, St. Martin Parish Police Jury, owned a servitude by which it could maintain the Dugas Ditch, a public drainage channel. At the time at which the defendant performed work (widening and deepening) to maintain the efficiency of the Dugas Ditch, plaintiff Dugas was hospitalized. Plaintiff was not present nor was she situated nearby; she did not view defendant's operations. Any traumatic experience which she may have suffered could not have been the result of defendant's maintenance operations on the Dugas Ditch.

IV

FRIVOLOUS APPEAL
Where the court finds that a frivolous appeal has been lodged, it may award damages. That power of the court is penal in nature and must be strictly construed. Only in those cases in which the court finds that the appeal was taken solely for delay and/or that counsel for appellant did not seriously believe the law which he advocated, are damages for a frivolous appeal allowable. C.C.P. Art. 2164; Seale v. Evangeline Parish Police Jury, 330 So.2d 378 (La.App. 3 Cir. 1976); Guidry v. Carmouche, 320 So.2d 267 (La.App. 3 Cir. 1975).
*277 In the case at bar, serious issues, especially that of the proper construction to be placed upon LSA-R.S. 38:113, are presented. We do not find that the appeal was filed solely to delay the execution of the judgment of the trial court and/or that counsel for appellant raised questions of law which he seriously disbelieved. Therefore, we will not assess damages for a frivolous appeal.
Costs of this appeal are assessed against the St. Martin Parish Police Jury, but are limited as to only those costs which are assessable against police juries, by law.
The judgment of the trial court is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs in the result but is of the opinion that the costs on appeal should be divided equally between the parties subject of course to the limitations imposed by law in favor of the Police Jury.
NOTES
[1] LSA-R.S. 38:113 provides:

The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels.
[2] (1) Such districts or sub-districts, wholly within the boundaries of one parish, by resolution of the police jury of said parish on its own motion in the absence of a functioning board of commissioners, or by resolution of the board of commissioners if there be an existing one; and
[3] § 215. Obstruction of drainage prohibited No person shall wilfully obstruct any natural or artificial drainage canal, creek, bayou, or small river, or any public or private drainage.

Whoever violates this Section shall be fined not less than twenty-five dollars nor more than one hundred dollars and in default of payment of fine and costs shall be imprisoned for not less than thirty days nor more than six months.
Each obstruction shall constitute a separate offense.
Failure on the part of anyone who has felled or cut trees in such manner that the tops obstruct any drainage or has placed any other obstruction in any drainage to remove the obstruction shall constitute prima facie evidence of wilful intent within the meaning of this Section.
The word drainage as used in this Section means any natural drain or any artificial drain which has been used for the purposes of drainage for at least ten years.