394 So.2d 1302 (1981)
TERREBONNE PARISH POLICE JURY
v.
Carroll MATHERNE.
No. 13889.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
*1303 Michael J. Samanie, Houma, for plaintiff and appellee.
A. J. Gray, III, Lake Charles, Minor Pipes, Houma, for defendant and appellant.
Before COVINGTON, CHIASSON and LEAR, JJ.
CHIASSON, Judge.
Defendant-appellant, Carroll Matherne, appeals the judgment of the trial court enjoining him from interfering in any way with the Forced Drainage Project No. 1-1A constructed and maintained by the plaintiff-appellee, Terrebonne Parish Police Jury, in the Parish of Terrebonne.
Carroll Matherne owns an 800 acre tract of land in Terrebonne Parish which is bordered by Bayou Cane to the West, Little Bayou Black to the South and Hollywood Road on the East. The northern boundary consists of a drainage canal referred to as "Canal C" which is the center of dispute in this matter.
Terrebonne Parish Police Jury devised a forced drainage system in the Parish known as the Forced Drainage Project No. 1-1A to control serious flooding in several residential areas. The waterways that were included in this project are the two previously mentioned bayous and the controversial "Canal C." The system was not intended to include Matherne's property, which is composed mostly of farmland.
After completion of the project in December of 1979, heavy rains pounded the Parish with eleven inches of rain falling within a 31 hour period in April of 1980. Extensive flooding occurred in the Control Drainage Project area. The system did not control the flooding as expected, so the Police Jury instituted an investigation to determine the cause of its failure.
Three of the Jury's employees, S. P. Brunet, Richard Baptiste, and John Swilley, testified that the failure of the system was caused by the flow of water from Matherne's property into Canal C. Several large drainage ditches had been opened by Matherne to allow more of his property to drain into Canal C. The Police Jury proceeded to "plug" these openings which caused the flooding to recede within the next 12 hours.
Matherne proceeded to reopen one of the openings and began what he termed "cleaning out" another ditch. The result was an additional enlarged drainage canal flowing into Canal C. As one employee described the opening, it was large enough to propel a motorboat through it.
The Police Jury again attempted to close the opening but Matherne ordered them off his property. After this action, the Police Jury obtained a Temporary Restraining Order restricting Matherne from taking any additional action until a hearing could be *1304 set on the matter for a preliminary injunction.
After a full hearing with the introduction of numerous aerial maps and many expert witnesses, the trial court for written reasons assigned granted the preliminary injunction. In its reasons, the court recognized the authority of the Police Jury to control and maintain Canal C under La.R.S. 38:113. In addition, the court concluded that injunctive relief was a proper remedy available to the Police Jury. It is from this ruling that the appellant, Matherne, perfected this appeal.
We will limit our discussion to the correctness of the trial court's decision on the injunction. Other remedies available to the parties are not before this court at this time and will not be passed upon.
Applicable to the determination of this matter is La.R.S. 38:113, which reads as follows:
"The various levee and drainage districts shall have control over all public drainage channels within the limits of their districts and for a space of one hundred feet on each side of the channel, selected by the district and recommended and approved by the Department of Public Works, whether the drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels, and may adopt rules and regulations for preserving the efficiency of the drainage channels."
Certain prerequisites are essential before such a governmental body as the Police Jury may take advantage of the provisions of this statute. First of all, the Police Jury must qualify as a levee and drainage district. Secondly, the canal it wants control over must be a public drainage channel within the limits of the governing body's district. Thirdly, the channel must be selected by the district and recommended and approved by the Department of Public Works. Lastly, this channel must have been improved by the governing body or must have been adopted without improvement as a necessary part or extension to improved drainage channels.
The Terrebonne Parish Police Jury is the proper party to bring this action. Under the law and the jurisprudence, the Police Jury which has control and maintains all public drainage channels is considered the appropriate governmental body to bring this action. La.R.S. 38:141. Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La.App. 3rd Cir. 1977); Plaquemines Parish Com'n v. Hero Lands Co., 388 So.2d 790 (La.1980).
The second prerequisite is the crucial requirement in this case. "Canal C" must be considered a public drainage channel located within the district for the Police Jury to have control over it. The Dugas case, supra, at page 273 discusses this concept by citing with approval the written reasons of the trial court:
"`Let's look now to a definition of public drainage channel to see if the drainage ditch in this case, which was always referred to as the "Dugas Ditch", comes within the meaning of the public drainage channel. I find no explicit definition in the law of this State of a public drainage channel. The conclusion I've reached, I've gleaned from several sources. One is Section 215 of Title 38, which defines drainage as any natural drain or artificial drain which has been used for purposes of drainage for at least ten years. In the case of Scott versus Red River-Bayou Pierre Levee and Drainage District of Louisiana, a 2nd Circuit decision, reported in (La.App.) 7 So.2d 429, the court said that for purposes of Act 61 of 1904, which is, as I said, R.S. 38:113, that for those purposes it's immaterial whether it's a natural drain or an artificial drain as long as it's maintained for many years as a drainage ditch. That's how that court defined a public drainage channel within the meaning of Section 113. In the Petit Anse [Coteau Drainage District v. Iberia & Vermillion Railroad Co., 124 La. 502, 50 So. 512] Case which I referred to earlier, the Louisiana Supreme Court in considering Act 61 of *1305 1904, defines public drainage by distinguishing public drainage from drainage affecting only the interests of particular individuals. The converse of that is that public drainage is drainage affecting the interests of other than particular individuals; that is, individuals in general and the public. (Tr., pgs. 146-147).'" (Footnote Omitted).
In his brief, defendant-appellant in a footnote states that he makes no issue over whether Canal C is "public" or "private." Aside from this statement, we agree that Canal C is a public drainage channel as found by the trial court in its reasons for judgment. Mr. S. P. Brunet, herbicide spray foreman for the Police Jury, testified that he maintained Canal C for four and one half years, making monthly inspections of the canal. Two other witnesses testified that the canal was cleaned and widened by the Police Jury during the construction of Project 1-1A. In addition, aerial maps introduced into evidence reflect that other areas drain into the canal even though it may only have been built by Matherne's ancestors in title for their farming purposes.
The third prerequisite is that the Channel was selected by the Police Jury and approved by the Department of Public Works. The construction plan maps were introduced into evidence and reflect that the disputed Canal C was selected by the Police Jury and was accepted as part of Project 1-1A by the Department of Public Works. We again agree with the trial court's factual conclusions on this point.
The remaining requirement is that the channel is a necessary part or extension to improve drainage channels. There is no serious dispute that the cleaning and control of Canal C is an integral part of the Forced Drainage Project 1-1A which is designed to improve the drainage channels in the immediate area.
With these prerequisites met, the Police Jury has acquired a limited servitude to control and maintain Canal C as a drainage channel. It has not claimed ownership of either the canal or the land adjacent to it nor has it acquired such. See Dugas, supra, and Scott v. Red River-Bayou Pierre Levee & D. Dist., 7 So.2d 429 (La.App. 2nd Cir. 1942). If the Police Jury has taken or damaged the adjacent landowner's property, there are available remedies for the landowners, but not in this summary proceeding.
Since the Police Jury enjoys the limited servitude which extends "for a space of one hundred feet on each side of the channel" it may take any appropriate measures solely for the "preservation of the efficiency of such drainage channel(s)." La.R.S. 38:113.
In this particular case, the appropriate measure was seeking to enjoin Matherne from interfering with the efficiency of drainage of Canal C. The record is full of testimony that the actions of Matherne in "cleaning out" his ditches had an adverse effect on the drainage in Canal C and in the Forced Drainage Project as a whole.
In granting the Preliminary Injunction, the trial judge stated:
"After reviewing the evidence presented in (sic) the arguments of counsel, this Court is convinced that Mr. Matherne's actions in cutting large ditches, which open into `Canal C' did, in fact, impair the integrity and efficiency of Forced Drainage Project 1-1A. Mr. Matherne himself testified that unless he were to be restrained by Court order, he had every intention of draining his 800 acre tract of land into `Canal C' and therefore enter Forced Drainage Project 1-1A. It is obvious that the drainage system was intended and designed to be a closed system. Continued introduction of excessive amounts of water from a source outside the system destroys the efficiency of the system itself. Unless the system's integrity is maintained, irreparable injury will be suffered by the many residents lying within the project area. * * *"
We agree with this conclusion and affirm the issuance of the Preliminary Injunction based on this showing of irreparable harm.
For these reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.