YELVERTON, Judge.
This is a suit by Mr. and Mrs. Harry G. Landry, Jr. against International Harvester Company and Sam Broussard, Inc. to recover damages and attorney’s fees allegedly sustained as a result of the defective manufacture of a 1979 International truck and/or faulty repair work performed by Sam Broussard, Inc. The defendant, Sam Broussard, Inc., filed a third party demand against International Harvester. The trial court rendered judgment in favor of the plaintiffs against both defendants in solido in the sum of $8,644.79, but denied the plaintiffs’ claim for attorney’s fees. Additionally, the trial court rendered judgment in favor of Sam Broussard, Inc. on its third party demand against International Harvester in the amount of $8,644.79, and also denied the third party plaintiff’s demand for attorney’s fees. From this judgment International Harvester appeals. Sam Broussard, Inc., answered the appeal from the third party judgment asking for attorney’s fees. Plaintiffs answered the appeal asking for an increase in the award as well as attorney’s fees. We reverse the judgment against International Harvester in the main demand, and also reverse the judgment against it in the third party demand. The judgment is otherwise affirmed.
The primary liability issue on appeal is whether there was proof that there existed a defect in the manufacture of the vehicle so as to hold International Harvester, as the manufacturer, liable. A second liability issue is whether Sam Broussard, Inc.’s liability is based on redhibition, or arises ex delicto. This latter issue must be determined in order to answer the contention of the parties regarding attorney’s fees.
The primary issue on appeal regarding damages is the sufficiency of the award. No one contends that it is too much. Only the plaintiffs have raised this issue on appeal, contending that the award is not enough. The remaining issue concerning the award is whether attorney’s fees are due.
We will discuss these issues after first narrating the basic facts.
FACTS
In 1979 and 1980 the Landrys were in the trucking business. Mr. Landry drove the truck and Mrs. Landry kept the books. The trial judge accurately described the facts leading up to this lawsuit as follows:
“On February 20, 1979, Harry G. Landry, Jr., purchased from Sam Broussard, Inc. a 1979 International truck manufactured by the International Harvester Company. He bought the truck for purposes of hauling sand, gravel, dirt and mud. .On September 12, 1979, he returned the truck for repairs as it was tracking to one side. Defective bushings were found on both sides of the Hen-drickson walking beam. These beams were removed and the bushings were reinstalled on them. This was done on the basis of a warranty claim by Brous-sard from International.
“Thereafter, on January 29, 1980, while Mr. Landry was driving his truck in an easterly direction on Old Highway 90 near the old naval station, he felt a jerk on the left rear of the truck and saw that the truck was beginning to sway. He pulled the truck over to the right and it went into the ditch and leaned over, causing considerable damages.”
The accident happened because the bushing bolt on the left rear end of the Hen-drickson Walking Beam, which is part of the rear suspension system of the truck, came out causing the walking beam to disengage from the rear end housing. This caused a loss of control, the accident, and the damages.
*808 THE LAWSUIT AND THE JUDGMENT
Plaintiffs lost time and money while the truck was being repaired. They sued Sam Broussard, Inc., as the seller, and International Harvester, as the manufacturer, in redhibition. They petitioned to have the sale rescinded and to recover the purchase price of the truck, or at least a reduction in price, as well as the cost of repairs, loss of earnings while the truck was being repaired, and an award for mental anguish because of the interference with their business. The case was consolidated with a subrogation suit by plaintiffs’ insurance company against the defendants for the cost of repairing the vehicle. That suit was settled prior to trial leaving only plaintiffs’ claims for redhibition and/or faulty repairs, down time, and mental anguish.
The trial court determined that the cause of the accident was the failure of the bolt and capscrew to hold the bushings in place. He found this condition to be a redhibitory defect in the manufacture of the vehicle. He concluded that the plaintiffs were entitled to recover from both the seller and the manufacturer, but that the plaintiff was not entitled to attorney’s fees for the stated reason that there was no showing of bad faith on the part of either defendant. Finding that the ultimate blame lay with a defect in the manufacture of the truck, the trial court gave Sam Broussard, Inc., a judgment in its third party demand against International Harvester.
We turn now to the liability issues involved in this appeal.
LIABILITY
Our understanding of the mechanics of how the accident happened — and consequently the responsibility for it — is based almost entirely upon the deposition testimony of an expert mechanic, Louis Margot. In this reliance we are in accord with the trial judge who indicated, in his written reasons, that he likewise relied heavily on this expert.
Mr. Margot explained that the Hendrick-son Walking Beam, used by International Harvester in the manufacture of its trucks, is the main connector between the front and rear axles and the frame. The accident happened because the walking beam became disconnected from the rear axle. In the words of Mr. Margot:
“There’s only one way that a walking beam could fall out from its position in the two hanging brackets. These two adapters go through this big bushing with the spacer and they’re secured with this three-quarter inch nut and bolt. This bolt does not carry any load, any stress, any poundage or nothing. This bolt merely holds these two adapters together. Your load is carried in these two adapters here, which are pushed in and pressed into those two hanging brackets. There is no load at all. I would say that the bolt did not break. I have never seen any of them break, due to the fact that there is no load, no stress on this bolt itself. This bolt merely holds the two caps together. In this situation here, I would assume that this bolt had to come loose. Had this bolt not ever came loose, the nut from the bolt, these two adapters would not have left one another. If these two adapters would not leave one another, your Hendrickson Walking Beam would never get out of place.”
Mr. Margot then expressed the opinion that the bolt came out because it was not properly tightened when it was put in.
There are four of these bolts in the suspension system, two for each axle. All four bolts had been removed and replaced four and a half months prior to the accident when plaintiff returned the truck to Sam Broussard, Inc., while it was in warranty, for repairs due to defective bushings. The employees of Sam Broussard, Inc., did the repairs. To replace the bushings it was necessary to remove the bolts and then replace them. The accident happened when the left rear bolt came out. It is clear to us from Mr. Margot’s testimony that the bolt came loose because it had been improperly tightened when replaced.
*809 Based on these facts and the opinion of the expert, the trial court was clearly wrong in finding that the accident was caused by a defect in the manufacture of the vehicle. The problem here was not a defect in the product; rather, it was negligent repair. The judgments against International Harvester in both the main and the third party demands were based on the trial court’s erroneous finding that there was a defect in the product. The judgments against this defendant must be reversed.
We are affirming the judgment against Sam Broussard, Inc. However, this defendant’s liability is not that of the seller who is liable because of a redhibitory defect in the thing sold, because we have found that there was no defect. This defendant’s liability is based on negligence.
Sam Broussard, Inc., as repairer, had a duty to the plaintiffs to perform the repair work in a non-negligent, prudent and skillful manner. La.Civil Code art. 2316; Williams v. Louisiana Machinery Co., Inc., 387 So.2d 8 (La.App. 3rd Cir.1980). The breach of this duty is an action in tort and not one in redhibition. Ibid.
DAMAGES
Plaintiffs answered the appeal contending they should have been awarded attorney’s fees under the Civil Code articles dealing with redhibition. This contention would have had merit had we affirmed the judgment against the manufacturer based on redhibition. But with the reversal of that judgment, and our determination that the liability of the remaining defendant arises ex delicto and not under the redhibition articles of our civil code, there is no basis for the award of attorney’s fees.
As stated earlier, the plaintiffs in their answer to the appeal seek an increase in the award. It is not an issue in the case that the award might be excessive.
The trial judge awarded $8,644.79. Plaintiffs seek to have the award increased to the amount originally demanded, $99,-630.48, broken down as follows:
1) cost of repairs $14,880.48
2) loss of earnings from down time 64,750.00
3) mental anguish 20,000.00
Item 1), cost of repairs, was not at issue in the trial court because plaintiffs’ insurer filed a subrogation intervention and settled for all repairs before trial.
Item 3), mental anguish, is not a recoverable element of damages in this case. In a suit against a tortfeasor for mental anguish as a result of damage to property, recovery is permitted in but four instances, discussed in Meshell v. Insurance Company of North America, 416 So.2d 1383 (La.App. 3rd Cir.1982) and Dugas v. St. Martin Parish Police Jury, 351 So.2d 271 (La.App. 3rd Cir.1977), writ denied 353 So.2d 1046 (La.1978). There is no evidence in the record to bring this case within any of the four instances in which an award of mental anguish would be permitted. We therefore find that plaintiff is not entitled to any award for this item.
The remaining question is whether the trial court’s award was manifestly insufficient to compensate plaintiffs for their proven loss of earnings from down time.
Although the award was not itemized in the judgment and the breakdown was unexplained in the trial court’s written reasons, it is apparent that the award was related to loss of earnings from down time. There is evidence in the record that plaintiffs’ net income from the trucking business in 1979, the year before this damage occurred, was $16,581. Allowing for a slight increase in projected profit for 1980, the amount of the award would be approximately 50 percent of a year’s profit. Whether this calculation entered into the trial court’s determination of the amount of the award is unknown, but these are our calculations for purposes of appellate review.
*810 The accident occurred on January 29, 1980. The truck was finally repaired by Darby Motors four months later on May 31, 1980. Plaintiffs never put the truck back in service, however, due in part to their deteriorating financial condition but also because of their own insurer’s delay in paying for the repairs. In October of that year they voluntarily released the vehicle in exchange for the release of their indebtedness.
We cannot say under these circumstances that the trial court’s award equal to half a year’s income for loss of earnings was manifestly insufficient.
For the reasons assigned, the judgment in favor of Mr. and Mrs. Harry G. Landry, Jr., against Sam Broussard, Inc., for $8,644.79 is affirmed. The judgment in favor of these plaintiffs against International Harvester is reversed and judgment is now rendered in favor of International Harvester dismissing plaintiffs’ claims. The judgment in the third party demand in favor of Sam Broussard, Inc., against International Harvester is reversed and judgment is now rendered in favor of International Harvester dismissing the third party demand. Sam Broussard, Inc., will pay all costs at trial and on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.