Dear Mr. Landry:
This Office is in receipt of your request to this Office for an Attorney General's Opinion on the following issues:
 1) Who owns the excavated soil of a drainage canal/channel constructed pursuant to La.R.S. 38:113?
 2) Can a Drainage District, Drainage Board, Parish, or Police Jury (collectively referred to herein as "Drainage District") legally spread the excavated soil from such a canal/channel outside the 100' servitude area authorized by La.R.S. 38:113?
 3) What is the remedy of the Drainage District should the landowner refuse the spread of the excavated material on any part of his land?[1]
You have also provided this Office with a legal opinion that you rendered to Mr. Ernest Freyou, President of Iberia Parish Government, on the issues. The questions that President Freyou requested that you respond to are general in nature. Therefore, without knowing the precise detail of which canal/channel and La.R.S. 38:113 servitude that President Freyou is referencing, this Office will respond to the questions in general and generic terms. This Office assumes that *Page 2 
the specific canal/channel and La.R.S. 38:113 servitude referred to in President Freyou's questions is within the jurisdiction of an established Drainage District. Additionally, as discussed in greater detail below, determinations of whether actions taken by the Drainage District are in violation of Article VII Section 14 of the Louisiana Constitution and whether the moving of dredge material onto the riparian owner's property constitutes a overburdening of the riparian owner's property are issues of fact, not to be determined in this Opinion.
Generally, Drainage Districts are mandated to construct and maintain drainage, drainage ditches, and drainage canals, to open any and all drains which they may deem necessary and to perform all work connected therewith.[2] It should also be noted that La.R.S. 38:113 is the statute that grants to the Drainage District a servitude over the drainage canals/channels within its district.[3]Moreover, La.R.S. 38:113 creates the assessorial right to use 100' of land on either side of the drainage canal/channel. Specifically, La.R.S. 38:113 states:
 The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage districts, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.
This Office is in agreement with your assessment that, absent fee title to the property located under the canal/channel, the soil excavated therefrom belongs to the riparian landowner and/or servient estate holder. The La.R.S. 38:113 servitude is very limited in nature. That statutory servitude exists for the purpose of preserving the efficiency of drainage and does not affect the ownership of the canal/channel.[4] The spoil dredged from these canals/channels is owned by the riparian property owners by virtue of their ownership of the canal/channel bottom and the Drainage District cannot give it away.[5] Further, the Louisiana Supreme Court declared that the Drainage District has, as an accessory right to the use of the servitude, the right to use the spoil in whatever manner is necessary to enhance thedrainage (the construction of levees, dams or other structures, etc.) *Page 3 
but it cannot unlawfully appropriate it for other purposes.[6]
Therefore, in keeping with the jurisprudential precedents, it is the opinion of this Office that the soil excavated from the drainage canals/channels is the property of the riparian landowner absent the existence of some contract between the landowner and the Drainage District to the contrary.
In conjunction with President Freyou's first question, this Office finds it necessary to also address Louisiana Civil Code Articles 744 and 745, which state as follows:
 La.C.C. Art. 744 — The owner of the dominant estate[7] has the right to make at his expense all the works that are necessary for the use and preservation of the servitude.
 La.C.C. Art. 745 — The owner of the dominant estate has the right to enter with his workman and equipment into the part of the servient estate that is needed for the construction or repair of works requires for the use and preservation of the servitude. He may deposit materials to be used for the works and debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible.
Article 744 does allow the dominant estate holder to do all work, at his expense, which is necessary to maintain the servitude. The Drainage District could argue that this would give it the authority to relocate the dredge material so that it does not interfere with the Drainage District's ability to access and maintain its drainage canals/channels required by La.R.S. 33:1236(13). However, Civil Code Article 744 does not contemplate the situation that the Drainage District has presented. The work necessary to maintain the servitude would interfere with the ownership of personal property. In other words, although the Drainage District can exercise its right to maintain the canal/channels, it cannot take the property of the riparian landowner without paying compensation simply because the work is necessary to maintain the servitude.
Article 745 does allow the Drainage District to place workmen and materials on the servient estate. However, that privilege comes with the reciprocal obligation of causing the least possible damage and of removing the workman and materials as soon as possible. Again, Article 745 does not address the situation of private ownership of the materials. Article 745 does allow for a temporary use of the servient estate; however, placing the dredge materials on a permanent *Page 4 
basis outside of the 100' servitude allowed by La.R.S. 38:113 is not covered by the privileges that the Drainage District may have under Article 745.[8]
The second question of "whether the Drainage District is legally authorized to spread the excavated soil from a drainage channel/canal outside the 100' servitude area authorized by La.R.S. 38:113," presents a more complex issue than does the first question. The owner of a dominant estate may not make use of the servitude in such a manner that aggravates the condition of the servient estate.[9] Whether a particular use results in aggravation of the condition of the servient estate is a question of fact and one that we cannot answer here.[10] Our review of the relevant law has shown that courts take into account the situation of the estates, the needs of the dominant estate, and the prejudice, if any, sustained by the owner of the servient estate.[11] Thus, the question for presentation to a court of competent jurisdiction would be: if a Drainage District were to spread dredge material from a drainage canal/channel upon the riparian landowner's property or servient estate outside of the authorized 100' assessorial right border, would that action be deemed as an aggravation of the condition imposed upon the servient estate such that the Drainage District would be susceptible to an eminent domain or takings action?
The Drainage District's third question is: what is its remedy to solve this problem?
Part of the answer to this question lies within the outcome of a declaratory judgment action as to whether the servient estate is unduly burdened by the moving or dumping of the dredge material outside of the 100' servitude. This Office is in agreement with your statement that "[t]he question of whether the [Drainage District] can force the landowner to receive the spoil against his wishes has never been addressed by the jurisprudence to the knowledge of this writer." Generally, if a person or entity does not want to accept or "take back" their private property, the property could be colloquially deemed as abandoned. However, to constitute a legal abandonment of personal property so as to give a third party the right to assume title and control of it, two essential elements must be present: there must be an act of abandonment coupled with the intention to abandon.[12] Again, questions of actual abandonment are factual in nature and must be presented to a court of competent jurisdiction for resolution.
Ideally, the Drainage District (dominant estate holder) and the riparian land owner (servient estate holder) would work out an agreement in which the servient estate holder accepts the dredge material and the dredge material is placed on *Page 5 
the riparian landowner's land. Nonetheless, if such an agreement can not be reached, the Drainage District is faced with the reality that, as a byproduct of its legal servitude, the Drainage District is now responsible for the administration of the riparian owner's or servient estate holder property (e.g. the dredge material). Because the dredge material is the property of the riparian owner or servient estate holder, the Drainage District may be restricted in its ability to transfer title, sell, move, or otherwise relocate the dredge material without the permission of the riparian owner. As a result of this fact, the Drainage District's only option for what to do with the dredge material is to pile the material on the 100' servitude allowed by La.R.S. 38:113. This presents a situation whereby, over time, the material will likely continue to accumulate and fill up the 100' servitude. This accumulation would diminish the Drainage District's ability to access and maintain the drainage canal/channel.
To remedy the Drainage District's accumulation issue, and if the permission of the riparian landowner cannot be obtained, the Drainage District must expend public funds to move, haul or relocate the dredge material. Questions have been raised whether the Drainage District's use of public funds to move, haul or relocate the dredge material would be in violation of Article VII Section 14 of the Louisiana Constitution.
All questions concerning the use of public funds must be examined in light of La.Const. art. VII, § 14, which provides, in pertinent part, as follows:
 "Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . . `
In Board of Directors of the Industrial Development Board of theCity of Gonzales, Louisiana, Inc. v. All Taxpayers, Property Owners,Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06),938 So.2d 11 (the "Cabela's" case), the Louisiana Supreme Court abandoned its prior analysis in City of Port Allen. v. LouisianaMun. Risk Mgmt. Agency, Inc., 439 So.2d 399 (La. 1983), and articulated a new standard of review governing La.Const. art. VII, § 14(A), stating that La.Const. art. VII, § 14(A) "is violated when public funds or property are gratuitously alienated." Cabela's,938 So.2d at 20.
In light of the Cabela's case, it is the opinion of this office that in order for an expenditure or transfer of public funds to be permissible under Art. VII, Sec. 14(A), the public entity must have the legal authority to make the expenditure and must show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and *Page 6 
reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds. TheCabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds.
In answer the above mentioned question of whether the Drainage District's action of moving, hauling or relocating the dredge material would be in violation of Article VII Section 14 of the Louisiana Constitution, it is the opinion of this Office that the Drainage District's actions would not be in violation of the Article VII Section 14. While the moving, hauling or relocating of the dredge materials would be accomplished by the expenditure of public funds, the Drainage District receives the reciprocal benefit of being able to properly maintain the drainage channel/canal. Further, the Drainage District, through its inherent authority and obligation to maintain[13] the channel/canal, could sell the dredge material and return to the riparian owner any profits from the sale of the dredge materials less any cost to the Drainage District for the work done by the Drainage District during the course of the transaction of hauling and selling the dredge material.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ JACKSON D. LOGAN, III Assistant Attorney General
 JDC/JDLIII/ard
[1] Some of President Freyou's questions are answered by Attorney General Opinion Number 78-1506. However, due to the fact that said opinion was issued over thirty years ago, this Office believes that a re-examination of the issues is necessary to address any changes in the law relevant to these questions. Following our review, this Office does not withdraw or amend Attorney General Opinion Number 78-1506 (attached hereto for your reference).
[2] La.R.S. 33:1236(13)
[3] See Whipp v. Bayou Plaquemine Brule DrainageBoard, et al., 476 So. 2d 1042, 1044 (La. App. 3 Cir. 1985).
[4] See Dugas v. St. Martin Parish Police Jury,351 So. 2d 271 (La. App. 3 Cir. 1977).
[5] See Justice v. Bourgeois,288 So. 2d 106, 109 (La. App. 4 Cir. 1974).
[6] See Plaquemines Parish Commission Council v. HeroLands Company, 388 So. 2d 790, 792 (La. 1980).
[7] Please note for the purposes of this Opinion the dominant estate holder is the Drainage District and the servient estate holder is the riparian landowner.
[8] The question of whether a burden is temporary or permanent would be the proper subject of a declaratory judgment action.
[9] See 4 La. Civ. L. Treatise, Predial Servitudes § 156 (3d ed. 2009).
[10] In this regard, as to questions of fact, we recommend that you seek a declaratory judgment from a court of competent jurisdiction.
[11] See 4 La. Civ. L. Treatise, Predial Servitudes § 156 (3d ed. 2009).
[12] See Bickham v. Bussa Oil Gas Co.,152 So. 393, 395 (La. App. 2 Cir. 1934).
[13] La.R.S. 33:1236(13)