NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-58

SOUTH FORK HOLDINGS, LLC AND
DELTA LAND SERVICES, LLC

VERSUS

CAMERON PARISH GRAVITY DRAINAGE DISTRICT NO. 8 AND
TRAVELERS INDEMNITY COMPANY

**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 10-20169
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE AD HOC

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Van H. Kyzar, and Candyce G. Perret, Judges.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

J. Michael Veron
Peyton F. Pawlicki
Veron, Bice, Palermo & Wilson, LLC
P. O. Box 2125
Lake Charles, LA 70602-2125
(337) 310-1600
COUNSEL FOR PLAINTIFFS-APPELLANTS:
    South Fork Holdings, LLC
    Delta Land Services, LLC

**James L. Pate**
**Cliff A. LaCour**
**NeunerPate**
**1001 West Pinhook Road, Suite 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Cameron Parish Gravity Drainage District No. 8**

**Gregory A. Grefer**
**G. Dwayne Maricle**
**Maricle & Associates**
**#1 Sanctuary Blvd, Suite 202**
**Mandeville, LA 70471**
**(985) 727-5021**
**COUNSEL FOR DEFENDANT-APPELLEE**
    **Travelers Indemnity Company**

**PICKETT, Judge.**

South Fork Holdings, LLC (South Fork) and Delta Land Services, LLC (Delta Land) appeal the trial court's decision granting the motion for summary judgment filed by Cameron Parish Gravity Drainage District Number 8 (GDD8) and its insurer, Travelers Indemnity Company (Travelers), and denying the motion for summary judgment filed by South Fork and Delta Land.

## FACTS

South Fork owns a 945-acre tract of land in Cameron Parish. Delta Land, South Fork's parent company, manages the land. The land is part of a wetland mitigation program, which was necessitated because SASOL built a major facility on wetlands in Cameron Parish. As part of the project, Delta Land filled two drainage laterals, Lateral 8 and Lateral 10, on the property.

After the two laterals were filled, Cal-Cam Line Road flooded on several occasions. GDD8 determined that in order to mitigate flooding, one of the laterals, Lateral 8, on South Fork's property needed to be dredged. GDD8 claims that Lateral 8 was subject to a legal servitude pursuant to La.R.S. 38:113, which states:

> The various levee and drainage districts shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district, and for a space of one hundred feet on both sides of the banks of such channels or outfall canals, and one hundred feet continuing outward from the mouth of such channels or outfall canals, whether the drainage channels or outfall canals have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels or outfall canals, and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals.

GDD8 held public hearings and gave notice to South Fork and Delta Land that it intended to dredge Lateral 8. Representatives from the companies did not attend the public meetings, but they sent letters indicating that the land was subject to a wetland mitigation program which was approved by the United States Army Corps of

Engineers (USACE) and subject to a conservation servitude. South Fork and Delta Land requested that GDD8 get wetlands and coastal use permits and approval from the USACE to dredge Lateral 8. GDD8 refused, claiming that permits were not needed since it already had a drainage servitude which allowed it to improve the drainage channels. GDD8 did request guidance from South Fork and Delta Lands about what to do with the material dredged from the ditch, but they were given no guidance.

After GDD8 completed the work, the USACE notified South Fork and Delta Land that the alterations, particularly the fill removed from Lateral 8, jeopardized its permits and would have to be removed. Failure to remove the fill would make South Fork and Delta Land liable to the permit holder, SASOL.

South Fork and Delta Land sued GDD8 and its insurer, Travelers, alleging trespass. They sought an injunction preventing GDD8 from entering the land to do future work on the property. South Fork and Delta Land also sought damages for bad faith trespass, repair of damages, inverse condemnation, and attorney fees.

GDD8 filed a motion for summary judgment, seeking dismissal of the claims for trespass and for costs and attorney fees. Travelers filed a separate motion for summary judgment adopting GDD8's arguments as their own. GDD8 filed a second motion for summary judgment seeking dismissal of the inverse condemnation claims. Again, Travelers filed a separate motion for summary judgment on the same grounds. South Fork and Delta Land filed a motion for partial summary judgment, seeking a finding that GDD8 trespassed on their land, that their actions constituted inverse condemnation, and that Travelers was liable as the insurer of GDD8. They also sought injunctive relief and costs and attorney fees. South Fork and Delta Land objected to certain evidence attached to their adversaries' motions.

The trial court heard the motions for summary judgment on January 13, 2021. The trial court allowed the parties to proffer all the evidence attached to their motions, subject to the objections raised in their briefs. GDD8 and Travelers had no objections to the evidence attached to South Fork and Delta Land's motion for partial summary judgment. South Fork and Delta Land raised objections previously made in their opposition to summary judgment to certain items of evidence supporting GDD8's motions for summary judgment. After considering all of the evidence and without ruling on any of the objections to the evidence raised by South Fork and Delta Land, the trial court granted the motion for summary judgment filed by GDD8 and Travelers and denied the motion for summary judgment filed by South Fork and Delta Land. The trial court awarded attorney fees to GDD8 in accordance with La.R.S. 38:215.1(B), reserving the quantum of those fees for a later proceeding.

South Fork and Delta Land appeal.

## ASSIGNMENTS OF ERROR

South Fork and Delta Land assert two assignments of error:

1. The trial court erred in denying the plaintiffs' motion for partial summary judgment.

2. The trial court erred in granting the defendants' motions for summary judgment.

## DISCUSSION

*Standard of Review*

This court reviews summary judgments de novo. *Schroeder v. Bd. of Supervisors of Louisiana State Univ.*, 591 So.2d 342, 345 (La.1991). "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Summary judgment is favored and must be construed to accomplish this purpose. *Id*. If the parties have had the opportunity to conduct "adequate discovery" and the evidence

shows "there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law[,]" summary judgment should be granted. La.Code Civ.P. art. 966(A)(3).

The party moving for summary judgment has the burden of proof. La.Code Civ.P. art. 966(D)(1). When the adverse party will have the burden of proof at trial, the mover must show that an essential element to the adverse party's claim is lacking. *Id*. The adverse party must then "produce factual support sufficient to establish" that a genuine issue of material facts exists or "that the mover is not entitled to judgment as a matter of law." *Id*. The allegations or denials in the adverse party's pleading will not defeat the motion. La.Code Civ.P. art. 967(B).

The key issue in this case is whether GDD8 established that it had acquired a drainage servitude as contemplated by La.R.S. 38:113. This statute grants to a drainage board a legal servitude over drainage channels within its district. The drainage board must meet certain prerequisites to take advantage of the servitude. *See Terrebonne Par. Police Jury v. Matherne*, 394 So.2d 1302, 1304 (La.App. 1 Cir.), *aff'd and amended*, 405 So.2d 314 (La.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234.

> First, the drainage channel must have been either previously improved by the drainage district or *adopted* without prior improvement as a necessary part of or extension to improved drainage channels. Second, the drainage channel must be a public channel.

*Whipp v. Bayou Plaquemine Brule Drainage Bd.*, 476 So.2d 1042, 1044 (La.App. 3 Cir. 1985).[1]

To satisfy the first element of this two-part inquiry, the drainage district must show that it improved the drainage channel. *Id.* Alternatively, the drainage district

---

[1] A third requirement enunciated in *Whipp*, approval by the state Office of Public Works, was abrogated by amendment to La.R.S. 38:113. 1991 La. Acts No. 309, § 2.

4

can show that it adopted a previously existing drainage channel as a necessary part of a drainage channel it has already improved and that it has acquired a right of way over the previously existing drainage channel either by expropriation or by purchase. *Id.* (citing *Terrebonne Parish Police Jury v. Matherne,* 405 So.2d 314, 317 (La.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234 (1982)).

To determine if the water channel in question is a public drainage channel as required by the second part of this test, a court must make a finding "that the channel has been used for the purpose of drainage for many years and that this drainage protects the interests of the public in general rather than the interests of particular individuals." *Whipp*, 476 So.2d at 1046 (citing *Dugas v. St. Martin Par. Police Jury*, 351 So.2d 271 (La.App. 3 Cir.1977), *writ denied*, 353 So.2d 1046 (La.1978)).

"The trial court, and this court on de novo review, may only consider evidence that is admissible under the express provisions of La.Code Civ.P. arts. 966-67." *Dowdle v. State Through Dep't of Culture, Recreation, & Tourism*, 18-878, p. 5 (La.App. 3 Cir. 5/15/19), 272 So.3d 77, 81-82.

The evidence in the record before us shows that GDD8 obtained a right of way from a previous owner of this tract of land, Amoco Corporation, on July 26, 1994, that expired on July 31, 1996. The stated consideration for the right of way was the benefits to the property as a result of the drainage improvement program undertaken by GDD8. Records of the work performed include contracts to dredge Laterals 8 and 10, and GDD8 accepted the work performed at a public meeting on January 8, 1997. To successfully prevail in its motions for summary judgment, though, GDD8 must also show that it maintained Lateral 8 for "many years" and that the drainage serves a public purpose.

5

The only evidence of maintenance of Lateral 8 for many years are the affidavits of Randy Thomas, a project coordinator for Cameron Parish, and Don Hohensee, president of Golden Ranch Aviation, Inc. Mr. Thomas states that he oversaw a project to chemically spray certain drainage laterals in Cameron Parish, in 2003. His affidavit further states that Laterals 8 and 10 were included in the project and that he personally inspected the laterals to see that they had been properly and effectively sprayed. Mr. Hohensee's affidavit states that he operated the helicopter that performed the spraying of Laterals 8 and 10 in 2003. This is the only evidence of maintenance of the laterals from 1997 until South Fork purchased the property in 2012. Furthermore, there is no evidence that GDD8 did any work on Laterals 8 or 10 after South Fork purchased the property until it undertook the work at issue in this suit on September 15, 2017.

We also find there is conflicting evidence that creates a genuine issue of material fact concerning the extent to which the drainage accomplished by Laterals 8 and 10 effects a public purpose. Jake McCain, who testified on behalf of GDD8 at the Section 1442 deposition of GDD8, admitted that the drainage district did no engineering studies to determine if clearing Lateral 8 would improve drainage at Cal-Cam Line Road. There is evidence about the drainage of the property in 1996, including hydrology maps. These maps, though, do not take into account changes made after Delta Land undertook the wetlands mitigation program and altered the topography of the area. We find genuine issues of material fact exists regarding both the maintenance of Lateral 8 for many years and the drainage for a public purpose requirement, which makes summary judgment inappropriate for either party in this case.

Finally, we note that the trial court considered a Google map to determine that the property in question adjacent to Lateral 8 was above 5 feet mean sea level, and

therefore, not subject to Coastal Use Permit Regulations. We find that Google Maps is not competent authority, as it is not self-authenticating nor has it been properly authenticated by testimony. The trial court erred in considering that evidence to support its finding that a Coastal Use Permit was not required. On remand, then, the parties must prove whether or not the property is subject to those requirements.

## CONCLUSION

The judgment of the trial court granting the motions for summary judgment filed by GDD8 and Travelers is reversed. We also reverse the finding of the trial court that GDD8 is entitled to attorney fees. The judgment of the trial court denying the motion for partial summary judgment filed by South Fork and Delta Land is affirmed. The case is remanded to the trial court for further proceedings. Costs of this appeal in the amount of $10,896.85 are assessed against Cameron Parish Gravity Drainage District No. 8 and Travelers Indemnity.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.