Dear Representative McMains:
This office is in receipt of your letter dated March 29, 1994 requesting an Attorney General Opinion involving issues related to the Louisiana Economic Development and Gaming Corporation Act. La. R.S. 4:601, et seq., (hereinafter "Act"). Subsequent to your March 29, 1994 opinion request, this office received your letter dated April 27, 1994 with two additional questions concerning the casino operating contract. Your questions as I understand them are:
 1) Whether the casino operating contract after its execution is a pure and absolute revocable privilege.
 2) What is the meaning of "pure and absolute revocable privilege" in the context of the Act?
 3) Is the Louisiana Economic Development and Gaming Corporation (hereinafter "LEDGC") authorized to negotiate stipulated damage provisions in the casino operating contract?
 4) Whether the LEDGC should require the casino operator to include in any of its financing statements or documents used in the solicitation of investments, an affirmative provision identifying the "extremely limited nature" of the casino operating contract.
 5) Whether provisions in the operating contract (license) may include language which acknowledges the right of the Louisiana Legislature to repeal the Act without liability? and
 6) Should grounds for contractor default or revocation under the casino operating contract be non-exclusive?
1) Whether the casino operating contract after its execution is a pure and absolute revocable privilege.
The statutory language regarding "pure and absolute revocable privilege" is contained in La. R.S. 4:602C which provides:
 "It is the express intent, desire and the policy of the legislature that no holder of the casino operating contract, applicant for license, permit, contract or other thing existing, issued, or let as a result of this Chapter shall have any right or action to obtain any license, permit, contract or the granting of the approval sought except as provided for and authorized by this Chapter. Any license, permit, contract, approval, or thing obtained or issued pursuant to the provisions of this Chapter is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitutions of the United States or of the state of Louisiana. Further, the legislature declares no holder acquires any vested right therein or thereunder."
The above referenced Section does not specifically state that the casino operating contract is a pure and absolute revocable privilege, but only that "any contract" is a pure and absolute revocable privilege. The first part of the above referenced section which negates any right or action to obtain certain "privileges" expressly applies to "the casino operating contract, applicant for license, permit, contract, or other thing existing, issued, or let . . .". However the second part of Section 602 C which references the pure and absolute revocable privilege relates only to "any license, permit, contract, approval or thing obtained . . ." For purposes of further analysis we shall assume that "pure and absolute revocable privilege" does encompass the casino operating contract.
2) What is the meaning of "pure and absolute revocable privilege" in the context of the Act?
In order to more completely understand the privilege aspect as well as the nature and character of the casino operating contract it is necessary to consider additional statutory provisions in the Act.
La. R.S. 4:602D provides:
 . . . notwithstanding any other laws of the state to the contrary, the state, through the Louisiana Economic Development and Gaming Corporation, . . . is hereby authorized to enter into a casino operating contract . . . pursuant to the provisions of this Chapter. (emphasis added)
La. R.S. 4:636 entitled "Transfer of contract", provides in subsection F:
 No contract may be revoked under this Section unless the contractor is given notice and a reasonable opportunity to comply with the corporation's order. (emphasis added)
La. R.S. 4:641I provides:
 In addition the casino gaming operator shall have the further right and be further entitled to obtain and be granted specific performance of the casino operating contract.
La. R.S. 4:644B provides a statutory mandate to the contractor and Corporation, regarding contract negotiation, specifically:
 The parties to the casino operating contract shall negotiate the reciprocal terms and elements of default, curative measures, remedies, and damages.
Pursuant to Subsection 644 B the Corporation appears to have the specific statutory obligation to negotiate certain specific legal, contractual terms as well as the authority to contractually agree to such terms in the casino operating contract itself.
Therefore, it appears that although the legislature did state its intent that the casino operating contract be a pure and absolute revocable privilege, the legislature also provided specific authority and rights relative to certain legal aspects of the contract including revocability, default, curative measures, remedies and damages. The legislature has further mandated that certain matters be negotiated between the parties.
Reading the Act as a whole, it appears to be the intent of the legislature that an agreement be negotiated, and entered into between the contractor and the Corporation and that the contract shall remain an absolute privilege and revocable, subject to its terms as well as any statutory provisions not specifically incorporated therein.
3) Is the Louisiana Economic Development and Gaming Corporation authorized to negotiate stipulated damage provisions in the casino operating contract?
La. R.S. 4:644B, again provides:
 The parties to the casino operating contract shall negotiate the reciprocal terms and elements of default, curative measures, remedies and damages.
Under this Subsection the Corporation is mandated to negotiate those specific legal aspects of the contract. No reference is made to specific types of damages, or methods of computing damages, nor are they specifically excluded. The Corporation is expressly obligated to act pursuant to the provisions of the Act, and implicitly in the best interest of the State in the negotiation process. Plaquemines Parish Commission Council v. Delta Development Co., Inc., 502 So.2d 1034 (La. 1987).
4) Whether the LEDGC should require the casino operator to include in any of its financing statements or documents used in the solicitation of investments, an affirmative provision identifying the "extremely limited nature" of the casino operating contract.
While your suggestion is very sensible, we have advised the Corporation not to take an active role in the proposed casino operator's "S1 Registration Statement under the Securities Act of 1993". The Act does not nor does any other state or federal law require the Corporation to take an active role in a proposed registration statement. To actively participate might inadvertently subject the Corporation to liability where no contractual liability would otherwise exist, due to a lack of privity of contract. Lumber Products, Inc. v. Hiriart255 So.2d 783 (La.App. 4th Cir. 1971).
5) Whether provisions in the operating contract (license) may include language which acknowledges the right of the Louisiana Legislature to repeal the Act without liability?
The following language is included in the present Request for Proposal:
 "L. (2) Acceptance of Risk of Judicial Interpretation or Legislative Action: To acknowledge that the issuance of this RFP/Q, the selection of an application and the issuance of a casino operating contractor are all subject to judicial interpretation and the effect of legislative amendment or to outright repeal of the Casino Act and that the Corporation and its directors, officers, employees, agents, attorneys and consultants shall have no responsibility to the applicant should the Casino Act or any part thereof be declared unlawful, changed or repealed."
Although this language relieves the Corporation of liability arising from legislative repeal of the Act, it does not expressly apply to the state. In conjunction with the provisions of La. R.S. 4:602 qualifying the "contract" as a pure and absolute revocable privilege, it would be advisable for clarification to negotiate language in the casino operating contract, pursuant to La. R.S. 4:644B, to the effect that the state shall not be liable for damages in the event the Act is repealed in whole or in part.
6) Should grounds for contractor default or revocation under the casino operating contract be non-exclusive?
Previous versions of the casino operating contract contained very broad language regarding the Corporation's right to put the casino contractor in default.
The following are paraphrased examples:
 If the casino operator, partners, shareholders or other management personnel is or becomes unsuitable.
 If the casino operator fails to comply with any affirmative or negative comments of the agreement or breaches any representations or warranties.
 If the casino operator is denied a license or withdraws a gaming related application in any jurisdiction, or is subjected to administrative gaming regulatory action in any jurisdiction.
If the casino operator advertising is offensive to the Corporation.
 If the casino operator acts or fails to act in a manner which is detrimental to the casino, Corporation or state.
These and other conditions of default are virtually non-exclusive. They appear consistent with both the obligation to negotiate terms of default pursuant to La. R.S. 4:644B and with the language of La. R.S. 4:602C which characterizes the contract as a pure and absolute revocable privilege.
You make the comment at the conclusion of your April 27, 1994 letter that "where the language is as explicit as it appears in Section 602 C there can be no implied powers that override it." This position would appear correct absent the provisions referred to above regarding contract negotiation. The authority to negotiate terms of default, curative measures, remedies and damages is more than an implied power, rather under Section 644 B it is an express mandate.
An implied power which, in the opinion of this office, is granted to the Corporation, is the bargaining inherent in the contract negotiation process. Realty Mart, Inc. v. La. Board of Tax Appeals, 336 So.2d 52 (La.App. 1st Cir. 1976)
In conclusion, I believe that the specific duties, rights and obligations of the Corporation as well as the casino operator/contractor are controlled by the provisions of the Act, and by the contemplated and forthcoming casino operating contract, rather than a limited reading of La. R.S. 4:602C in and of itself.
Hopefully this opinion adequately addresses your concerns. Should you have any additional questions, please do not hesitate to contact me.
Sincerely,
 RICHARD P. IEYOUB Attorney General
BY: THOMAS A. WARNER, III Assistant Attorney General TAW:ddt